CALEB HUNT *vs.* WILLIAM FAY, Adm'r of RICHARD GOOKIN.

Where a person, having his domicil in New-Hampshire, dies there, and his estate is there represented insolvent, and commissioners appointed, the debt of a creditor residing there, who neglects to present his claim to the commissioners, is barred. Nor can such creditor move into this state, and have his claim allowed by commissioners appointed here, where an ancillary administration is taken out, and a commission of insolvency issues. The object of the administration here is only to prove the debts in this state.

This cause comes here for adjudication upon an appeal taken from the decision of the commissioners on the estate of Richard Gookin, disallowing the plaintiff's claim. A statement of the case will be found incorporated into the opinion of the court. In addition to what is stated in the opinion of the court, perhaps it should be noted that the plaintiff avers in his replication to the plea in bar, that the estate of Mr. Gookin, although represented insolvent by the administrator here, was in fact solvent; and at the time the plaintiff exhibited his claims to commissioners, he was domiciled here. The defendant also plead in bar a contract between him and Mrs. Gookin, administratrix, as merging the original demand, which was however not considered by the court, having decided the cause for the defendant on other grounds.

*Mr. Upham for plaintiff.*—1. Is the plaintiff's demand barred here because he did not exhibit it to the commissioner on Richard Gookin's estate in New-Hampshire?

This question, we think, can be answered in the negative, without doing violence to the law, or injustice to the parties.

The facts in the case, as admitted by the pleadings, are the following, viz: Richard Gookin, at the time of his decease, in 1826, had his domicil in Haverhill, in the state of New-Hampshire. The plaintiff also had his domicil in New-Hampshire, at the time of the decease of the said Richard, and until the 15th of October, A. D. 1830, when he removed from said New-Hampshire to Montpelier, in this state, where he has ever since resided and had his domicil.

The estate of Richard Gookin in New-Hampshire was represented insolvent, and a commissioner was appointed in due form of law to receive, examine, and adjust the claims and demands against said estate. The plaintiff did not exhibit his demand to the commissioner in New-Hampshire.

The estate of the said Richard, though represented insolvent, was solvent to a large amount, to wit, $50,000.

It is also admitted that Gookin, at the time of his decease, owned a large estate in Rutland, Vermont, and that Mr. Fay of said

Rutland, was in due form of law, appointed administrator on said estate, and that he represented the same insolvent, although in point of fact, it was solvent to a large amount.

Whereupon, commissioners were duly appointed to receive, examine, and adjust the claims and demands against said estate. The plaintiff having his domicil in Montpelier, Vermont, exhibited his demand against the estate of the said Gookin to the aforesaid commissioners, and it was rejected and disallowed. Whereupon he took his appeal in due form of law. And the question now presented to this court is, was the plaintiff's demand properly rejected and disallowed by the commissioners on said estate?

The administration granted to the defendant, Fay, is to be considered not only as a means of collecting the effects of the intestate within this jurisdiction, but of answering according to the rules of the same jurisdiction, the demands of creditors and all legal liens upon those effects.—*Selectmen of Boston* vs. *Boylston*, 4 Mass. R. 318, 324. *Richards, Adm'r* vs. *Dutch et al.* 8 Mass. R. 506, 515. *Dawes* vs. *Boylston*, 9 Mass. R. 337, 355. *Dawes* vs. *Head et al.* 3 Pick. R. 128, 145.

The plaintiff, at the time he exhibited his demand to the commissioners on Gookin's estate, was a citizen of Vermont, and entitled to the aid of our laws for the protection of his property and the recovery of his debts.

The 7th section of the New-Hampshire act regulating the settlement and distribution of insolvent estates, declares that all demands against such estate, exhibited to the commissioners and rejected by them, and not prosecuted to judgment in the manner in this act prescribed, and all demands against such estate, which by virtue of this act might have been exhibited to, and allowed by them, but which were not exhibited and allowed, shall be *forever barred*.

Now it is insisted here, that the plaintiff's demand is "forever barred," because he did not exhibit it to the commissioner in New Hampshire, where he had his domicil—where the commission of insolvency issued.

To this objection we answer, first, that Richard Gookin, at the time of his decease, owned a large estate in Vermont, as well as New-Hampshire; and that administration was taken in both states, and commissioners appointed to receive, examine, and adjust the claims of creditors to said estate. Now we maintain that the plaintiff was not bound to exhibit his demand to to the commissioners in New-Hampshire, in order to save the statute bar. If he has exhibited his demand to the commissioners on *Richard Gookin's es-*

RUTLAND,
*February,*
1835.
___
Hunt
. vs.
Fay, Adm'r.

RUTLAND,
February,
1835.

Hunt
vs.
Fay, Adm'i.

*tate*, he has done all that the law required him to do for the protection of his claim.

The statute does not declare that all demands " shall be forever barred," which were not exhibited to the commissioners in the state where the intestate had his domicil at the time of his death. It says all claims which might have been exhibited *to*, and allowed by the commissioners, but which were not exhibited and allowed, " shall be forever barred." Were not the commissioners, appointed by the probate court in the district of Rutland, as much the commissioners on Richard Gookin's estate, as the commissioners appointed by the probate court in New-Hampshire? We think they were. If we are correct then in this view of the case, the plaintiff has lost nothing by omitting to exhibit his demand to the commissioner in New-Hampshire.

In the *second* place, we insist that the statute of New-Hampshire operates merely upon the remedy, and can have no extra territorial force. The *lex loci contractus*, we admit governs as to the *nature, construction*, and *validity* of the contract; but the *lex fori*, we maintain governs as to the *remedy*. In support of this position, we refer to the following authorities, viz : *Vermont State Bank* vs. *Porter*, 5 Day's Rep. 316. *Andrews* vs. *Herriot*, 4 Cowan's Rep. 508, and cases cited in the note. *Pearsall* vs. *Dwight*, 2 Mass. 84. *Le Roy* vs. *Crowninshield*, 2 Mason, 151.

Foreign statutes of limitations belong to the *lex fori*, and are in no case available here; but our own statutes of the kind are applicable to all actions pending in our courts.—*Decouche* vs. *Lazetier*, 3 John. Ch. Rep. 190. *Nash* vs. *Tupper*, 1 Cain's Rep. 102. *Ruggles* vs. *Keeler*, 3 John. Rep. 263. *Pearsall* vs. *Dwight*, 2 Mass. Rep. 84. *Bryne* vs. *Crowninshield*, 17 Mass. Rep. 55. *Medbury* vs. *Hopkins*, 3 Con. Rep. 472. *Harper* vs. *Houghton*, 1 Har. and John. Rep. 453. *Le Roy* vs. *Crowninshield*, 2 Mason's Rep. 151. *Bulger* vs. *Roche*, 11 Pick. Rep. 36.

The statute of New-Hampshire, upon which my learned friend relies, may be likened to a statute of limitations. Indeed, it is nothing more than a statute of limitations. It merely bars the remedy. It has nothing to do with the nature, construction, or validity of the contract.

In support of this position, we have authorities directly in point. In *Lincoln* vs. *Battelle*, (6 Wendell's Rep. 475,) the court ruled that a law of a foreign state authorizing proceedings calling on creditors to present their demands against a debtor by a specified day, nd declaring the effect of omission to be, not only to *take away*

the *remedy*, but to extinguish the debt, will be considered, where there is no insolvency, in the nature of a statute of limitations, affecting the remedy, and not the validity of the contract.—*Prentiss et al.* vs. *Savage*, 13 Mass. Rep. 20. *Tupper* vs. *Poor et al.* 15 Mass. Rep. 419. 2 *id.* 89.

RUTLAND,
*February*,
1835.
Hunt
*vs.*
Fay, Adm'r.

So an insolvent discharge of the person relates merely to the remedy, and if granted in another state or foreign country, it will not, under any circumstances, or in any stage of the cause, be noticed by our courts, or allowed to operate here for any purpose.— *White* vs. *Canfield*, 7 John Rep. 117. *Tupper* vs. *Poor*, 15 Mass. Rep. 419. *Watson* vs. *Bourne*, 10 Mass. Rep. 337. *James* vs. *Allen*, 1 Dall. 88. *Sicard* vs. *Whale*, 11 John. Rep. 194. *Peck* vs. *Harier*, 14 John. Rep. 346. *Whittemore* vs. *Adams*, 2 Cowan's Rep. 626. *Woodbridge* vs. *Wright*, 3 Con. Rep. 523. 2 Mason, 151.

Again, the *cessio bonorum* of the civil law has never been considered as an extinguishment of the debt itself.

We have no desire to combat the principle that what discharges and extinguishes a debt in the country where it was contracted, discharges and extinguishes it every where. But we do insist that this discharge, which is available every where, must operate upon and extinguish the debt, not merely bar the remedy, like the statute of limitations, or the statute pleaded in bar in this case. What is there in the New-Hampshire act, which operated upon and extinguished the plaintiff's debt? Nothing, we apprehend. It merely bars the remedy, and nothing more.

There is a large and important class of cases under the *bankrupt laws*, properly so called, by which both the person and the property of the debtor are released from all liability whatever in the country where he obtains his discharge. By the comity of nations, these discharges are respected by foreign tribunals as well as by our own, where they are granted. The case at bar cannot, with any propriety, be likened to a discharge under the *bankrupt laws*. If Gookin's whole estate had been within the control of the probate court in New-Hampshire, and had passed under its jurisdiction, the case at bar would bear a stronger analogy to a discharge under the *bankrupt law* than it now does. In the case of bankruptcy, the whole property of the bankrupt, in whatever country situated, vests in his assignees, and they may sue for and recover it in any country where it happens to be found. In this case, only a part of Gookin's estate was within the jurisdiction of the probate court in N. Hampshire. That portion of it situated in this state, was never subject

RUTLAND,
February,
1835.

Hunt
vs.
Fay, Adm'r.

to the jurisdiction of the court in New-Hampshire. The plaintiff, it is true, once had a lien upon Gookin's effects in N. Hampshire, for the payment of his debt. That, he has lost by not exhibiting his demand to the commissioner in New-Hampshire. But how can it be said that he has lost his lien upon other effects of Gookin not within the jurisdiction of the probate court of N. Hampshire? It is true the plaintiff could not prosecute his claim against the estate of Gookin in New-Hampshire, if administration had not been taken here.. And it is also true that a creditor here, who did not present his claim there, could not prosecute it there. But a creditor here, although barred by the proceedings there, could exhibit his claim to the commissioners on the same estate here, and the New-Hampshire statute would be no bar. Why, let me ask, should the plaintiff in this case be barred by a statute of N. Hampshire, which would be no bar to the claim of any other citizen in the state?

*Smith and Peck for defendant.*—1. The plaintiff's claims are barred by the statute of New-Hampshire. The partnership having been carried on in that state—the parties being domiciled there, and the plaintiff having there continued his residence till long after the time allowed for the presentation of claims had expired, the plaintiff has no remedy here save what is founded on the contract made with Mrs. Gookin—he having neglected to present his claims before the commissioner. It is perfectly clear, that no action whatever would be sustained in New-Hampshire for the recovery of any part of the claims embraced in the present suit, as the 7th section of the New-Hampshire act is a positive bar, inasmuch as it provides that all claims which might be, but which are *not* exhibited to the commissioners, "*shall be forever barred.*" How then is this case to be exempted from the operation of the rule that what is a discharge of a contract in the government where it was made, is a discharge every where? This principle is too firmly settled to need the aid of authority: but there are some cases in which this rule is laid down and enforced, that bear so strong an analogy to the case under discussion, that we shall be pardoned for calling the attention of the court to them for a moment.—*Warder & Warder* vs. *Azell,* 2 Wash. Rep. 282. *Powers* vs. *Lynch,* 3 Mass. Rep. 77. *Vermont State Bank* vs. *Porter,* 5 Day's Rep. 316. *Conpamp* vs. *Bunel,* 4 Dall. 419. *Searight* vs. *Calbraith, id.* 325. *Hall* vs. *Blake,* 13 Mass. Rep. 153. *Vancluf* vs. *Therason,* 3 Pick. 12. *Talleyrand.* vs. *Boulanger,* 3 Vesey, jr. 446.

Swift, Ch. J., in delivering the opinion of the court in *Vermont State Bank* vs. *Porter*, says, "There is the same reason that the defendant should have advantage of local laws in his defence, as that the plaintiff should have such privilege in supporting his claim." It was in accordance with this principle that this court, in 1833, in Orange County, in the case of *Knight* vs. *Kimball*, held that a contract which was discharged by the laws of New-Hampshire, could not be made the foundation of a suit in the courts of this state. That was an action brought on a note, or written contract, payable in specific articles, at the defendant's house, on a given day. Both parties, at the time the contract was executed, and when it fell due, resided in that state. The defendant, on the trial, offered to prove that on the day the contract became due, he had on hand property of the description mentioned in the contract, sufficient to pay it ; and that by the *common law* of that state, this was a bar to any suit founded on the contract in their courts. It was ruled that this evidence would have been admissible, and constituted a good defence, if the facts had been specially pleaded. But the plaintiff's counsel endeavored to avoid the effect of the New Hampshire statute by treating it as a limitation act, and they assimilate it to the general statutes of limitation. But the analogy is very distant, if any exists. Acts of limitation rather establish, that certain circumstances shall amount to evidence that a contract has been performed, than dispense with its performance.—(Per Marshall, Ch. J., in *Sturgis* vs. *Crowninshield*, 4 Wheat. 122.) Or in other words, the law raises the presumption after the statute has run, that the debt has been paid, the evidence of which has been lost. The statute now before the court, does not proceed upon this ground. It declares that the *demand* itself shall be barred if not presented to the commissioners ; and this forms a positive bar, and extinguishes the debt.—(*Spalding* vs. *Butts et al.* 6 Conn. Rep. 28.) The statute of limitations may be avoided by an acknowledgement of the debt ; but if an administrator should acknowledge a debt to be due from the intestate's estate, which had not been presented to the commissioners, or even if he should promise to pay it, the operation of the statute in question upon the claim would not be defeated, nor he be personally bound by such promise, unless the promise was founded upon some new and distinct consideration. This shows the statutes are different in their character.—*Brown et al.* vs. *Anderson et al.* 13 Mass. Rep. 201 *Emerson* vs. *Thompson et al.* 16 Mass. 429. 3 N. H. Rep. 491.

RUTLAND,
*February*,
1835.

Hunt
*vs.*
Fay, Adm'r.

RUTLAND,
February,
1835.

Hunt
vs.
Fay, Adm'r.

But if the New-Hampshire statute is likened to a limitation act, its effect is not obviated ; for the plaintiff's *right* as well as his remedy is extinguished. If the *right* was not gone—if the statute was a mere limitation act, and only affected the remedy, the bebt, as in other cases, would be revived by a new promise. The rule seems to be this, that when it is the intention of a statute to convert a possession of any given length of time, or a neglect to institute proceedings according to its provisions, into a positive and unavoidable bar, the statute is a bar in the courts of every government.—*Beckford vss. Wade,* 17 Vesey, 88. *Shelby* vs. *Gay,* 11 Wheat. 361. *Brent* vs. *Chapman,* 5 Cranch, 358. *Le Roy* vs. *Crowninshield,* 2 Mason, 151, 167.

The case at bar is more like the case of a discharge under an insolvent law, which is a bar to all contracts existing at the time of the discharge, if the debt was contracted and the parties domiciled in the state where the discharge was obtained.—*Ogden* vs. *Saunders,* 12 Wheat. 213 and note. *Boyle* vs. *Zachasir,* 6 Peters. 348. *Sabring* vs. *Messereau et al.* 9 Cowan, 344, 2 Kent's Com. 324, 12 John. R. 142. 5 Mass. R. 509. 6 *id.* 137. 13 *id.* 1.

But if an insolvent, after he has obtained his discharge, promise to pay a debt included in the discharge, he is bound by such promise, and payment may be enforced. The bar then, presented by the New-Hampshire statute, is of a more positive and permanent character than is to be found in any bankrupt law ; and while the effect of the former cannot be avoided by any acknowledgment or promise, the latter may. Yet it is urged upon the court that the effect of the New-Hampshire act is confined to the limits of that state, while the discharge under an insolvent law follows the debtor over the whole world, and protects him in the courts of every civilized nation. A strange doctrine surely ! To a foreign contract we cannot plead our statute of usury, because this court does not admit of a defence on the merits which the law of the country where the deed was executed would not allow. The *lex fori* knows not of any bar to the *right,* which does not exist by the *lex loci contractus* . On this principle, a plea of infancy to a note has been disallowed, because not shown to be a good defence when the note was made.—*Thompson* vs. *Ketcham,* 8 John. Rep. 189.

Where is the difference between a bar from a tender, as in *Warder & Warder* vs. *Azell,* a bar from infancy, a bar from a discharge under an insolvent law, a bar under the limitation act of Virginia,

as in *Shelby* vs. *Gay*, and a bar under the New-Hampshire stat-
ute ? Why is it that any of these bars constitute a defence in the
courts of a foreign government ? Because they are a bar in the state
where the contract was made and was to be performed. Would
not the New-Hampshire act form a bar to the present action, if
prosecuted in that state ? Of this there is no doubt. Why not al-
low it, then, this effect here ?

This case stands precisely as it would if the plaintiff was still
domiciled in New-Hampshire, as his claims were barred when he
left the state, and the bar is not avoided by a change of residence.
The case comes to this : Can a citizen of New-Hampshire, whose
claims are barred by the law in question, come here and have them
allowed ? Suppose Mr. Fay had not represented the estate to be
insolvent, and no commissioners had been appointed, could the
plaintiff have sustained an action to enforce payment of the claims
now sought to be recovered ? It is difficult for us to see how the
statute could be avoided; and it is equally difficult to see how the
appointment of commissioners alters the case. We are not to lose
sight of the fact that the administration here is merely ancillary, and
was taken out for the purpose of collecting the debts due the estate,
which are to be remitted to New-Hampshire for distribution.

It has long been *vexata questio* whether in such case the funds
are to be first appropriated to the payment of home creditors and
the balance remitted to the foreign administrator, or the whole re-
mitted in the first instance. But waiving this question, and assu-
ming the ground that the assets are to be applied in payment of the
debts of our citizens, the plaintiff gains nothing by the admission,
as for this purpose he is not a citizen of this state, and he ought not
to be allowed to disturb the settlement here.—*Dawes* vs. *Head et
al.* 3 Pick. 128.

The opinion of the court was delivered by
WILLIAMS, Ch. J.—Richard Gookin having his domicil in Hav-
erhill, in the state of New Hampshire, deceased in the year 1826.
Letters of administration on his estate were duly granted in the
state of New Hampshire. The estate was represented insolvent,
and a commissioner was appointed to receive and examine the
claims of the creditors to the estate. The present plaintiff, at that
time and until after the commissioner had made his return, in pur-
suance of the statute of the state of New Hampshire, was a resi-
dent in and had his domicil also in the state of New Hampshire.
He omitted to present any claim against the estate of Mr. Gookin
23

RUTLAND,
February,
1835.

Hunt
vs.
Fay, Adm'r.

to the commissioner.  Afterwards, letters of administration on the estate of Mr. Gookin within this state were granted to the defendant, commissioners were duly appointed to receive and examine the claims of the creditors against said estate, and the plaintiff here presents to the commissioners his claim as a creditor to the estate. The administrator pleads in bar the statute of New Hampshire, and the question is, whether the plaintiff, having neglected to present his claim against the estate in New Hampshire, can be considered as a creditor to the estate, and have his debt here allowed.

The statute of that state provides, that where an estate is represented insolvent and a commission issues, all claims which might be, but which are not exhibited to commissioners, shall be forever barred.  The plaintiff was under no disability to present his claim ; and further, it appears by the pleadings, that the estate of Mr. Gookin is not in fact insolvent, although so represented.  The effect of the statute of New Hampshire on the claim of the plaintiff is now to be considered.

It may here be noticed, that where a suit is had against an administrator, it is of no consequence whether an estate represented insolvent actually proves to be so or not.  If other claims are allowed against an estate, except those allowed by commissioners, an estate may prove to be insolvent, when by the returns of the commissioners it would appear to be otherwise.  Hence, where an estate is represented insolvent, and settled as such, the rights and duties of the creditors and administrators are the same, whether it is in fact insolvent or not.  The averment, therefore, in the pleading, that the estate proved solvent, is to be disregarded.

The general principles of law, which are considered as having a bearing on the question before us, have been settled by repeated adjudications.  The difficulty arises from the application of those principles to the case before us.  It has become a rule of international jurisprudence, and is settled also as the municipal law of most states, that the *lex loci contractus* governs as to the nature, construction and validity of a contract.  From the operation of this rule, it has been considered that a discharge of a debt in the country where it is made, or where it is to be executed, is a discharge every where.  The case before us is considered by the defendant's counsel as governed by the application of this rule.  It has also become a settled rule of law, that the *lex fori* governs entirely as to the remedy.  Whoever comes into another jurisdiction is entitled to all the benefits and subject to all the disabilities, either in enforcing or defending against claims which the persons belonging

Rutland,
February,
1835.

Hunt
vs.
Fay, Adm'r.

to that jurisdiction have or are subject to.   Hence a law directing
the mode of proceeding, or affecting the remedy alone between
creditors and debtors, has no extra territorial force.   From this
principle it has been held, that the statute of limitation in the coun-
try where a debt was contracted is of no force in the state where
the collection of it is attempted to be enforced, notwithstanding it
in fact extinguishes all remedy in the place where the contract was
made.   The propriety of the application of the principle to cases
of that class was questioned in the case of *Le Roy* vs. *Crownin-
shield*, 2 Mason, 151, but it was considered as too well established
by authority to be shaken.   The plaintiff contends that the statute
of New Hampshire only affects the remedy, and for that reason
that his claim may be enforced in any jurisdiction, where a suit can
be instituted.   So far as there is any analogy between the cases
which have established these principles and the case at bar, it is
apparent to me that this case falls within the former principle; that
the effect of the statute of New Hampshire is more in the nature
of a discharge of the debt, or an extinguishment of the right of
the creditor, than of a mere suspension or extinction of the reme-
dy.   It will still, however, remain a question, whether it is such a
discharge as we ought to give effect to here.

It has been very justly remarked, that foreign laws are not ad-
mitted to have any effect, *ex proprio rigore*, but only *ex comitate*;
and that the judicial tribunals are to exercise a discretion wherever
a new case comes before them for the application of the principles
which have been adopted.   Thus while infancy, a tender and re-
fusal, &c., if they constitute a valid defence under the *lex loci con-
tractus*, will be considered as a good defence elsewhere; and also
while the bankrupt laws or insolvent laws of a state where they
have power to pass them, and no constitutional barrier is overleap-
ed, are respected every where, yet if those laws are manifestly un-
just and injurious in their operation on the citizens of another gov-
ernment, the courts of that government will not sanction them.   It
was asserted by the Lord Chancellor in *Burton, ex parte*, 1 Atk.
255, that an absolute discharge of the effects as well as of the per-
son by a bankrupt law in Holland would be an absolute discharge
of the debt, and this assertion has since been settled to be the law
by repeated adjudications both in England and in the United States.
Yet it has been held, that if a discharge was had under a foreign
law, manifestly unjust, and not justified by the law of nations, the
courts of England would not regard it.   This principle was asserted
in the case of *Blanchard* vs. *Russell*, 13 Mass. Rep. 6, and in

RUTLAND,
February,
1835.

Hunt
vs.
Fay, Adm'r.

the case of *Prentiss et al.* vs. *Savage*, 13 Mass. Rep. 20.   The court refused to recognize a discharge obtained under an insolvent law made by the government in the island of Jamaica, upon the ground, that if the law was intended to operate beyond the jurisdiction of the government where it was made, it was evidently partial and unjust, and the principles of comity did not require that it should be regarded.   The case of *Lincoln* vs. *Battele*, 6 Wend. 475, which is so much relied on in the argument, might have been decided on this principle.   Of that case, however, it is sufficient to say, that it is not applicable to the case before us.   Upon the principle which the court assumed, there can be no doubt of the correctness of the decision.   They lay stress on the fact, that there was no insolvency, and no surrender of property, but that the calling in of the creditors was nothing more than a limitation of the remedy.   Upon these premises, if the proceedings were in the nature of a limitation, the conclusion from all the authorities on this subject was, that the debt of the creditor was not thereby discharged, but might be enforced by the courts of any other jurisdiction. The arguments of the attorney general in opposition to the decision of the court, it must be confessed, are very able and entitled to great weight.

The statute of New Hampshire, which is in question, is not liable to any objections as either partial or unjust.   It is similar in its provisions to the statutes of many other states, and provides for an equal distribution of the effects of a deceased debtor among all his creditors, if there is a deficiency.   In its terms it is a complete extinguishment of all right and remedy in that state.   The administrator there is not liable to any action after payment of the debts allowed, either in the courts of New Hampshire or elsewhere.   For although there has been a decision, that a foreign administrator or executor is liable to be sued in another state, and is accountable for all the assets which come into his hands, unless he has duly administered, yet that decision has been questioned by very high authority, (Story, *de conflictu legum,*) and seems not to be sustained by principle.

The original party to the contract, Mr. Gookin, is deceased, his estate has passed into the hands of his representatives, and as there is no remedy left, either against the person of the administrator or estate, it would seem to follow as a necessary conclusion, that all the debts of the creditors, not presented to the commissioner in New Hampshire, were discharged.   It is very apparent that this must be the case, if there were no effects, except in New Hampshire,

RUTLAND,
*February,*
1835.

Hunt
*vs.*
Fay, Adm'r.

where Mr. Gookin had his domicil and where he deceased. For although debts may be said to have no *situs*, but to follow the person of the debtor when living, yet on his decease they must be pursued in the place where he left effects, on which letters of administration are taken, and only in the courts of that place. It is obvious, therefore, that if there had been no property of Mr. Gookin in any other place than the state of New Hampshire, all his creditors must have resorted there to obtain satisfaction of their debts, and could only have a right or remedy according to the laws of that state. The personal estate of the deceased became vested in his administrators, in trust for those to whom it should be ordered, after the payment of the debts ascertained in the mode required by statute, and the real estate descended to the heirs, except so far as it was made assets in the hands of the administrator for the payment of debts. To enforce or collect these claims, the creditors must have resort to the tribunals of that state, prove their debts before commissioners, if the estate was represented insolvent, and be subject to all the consequences attending their neglect so to do. The original claim presented to commissioners and allowed is extinct, becomes merged in a debt of record, for the recovery of which an appropriate remedy is provided, and if not presented, is declared to be forever barred, and no remedy left, either against person or estate.

It is obvious, that the language and effect of this statute is altogether different from that used in ordinary statutes of limitation. In this statute the claim is said to be barred. In the statute of limitations, the language is, that no action shall be maintained. In the statute of limitations, the remedy may be revived by a new promise. The change of residence of the debtor may furnish a new remedy, but in this case the debt is barred, and no suit can be sustained against the administrator.

It is argued, however, that the effect of considering this neglect as a discharge will be, to defeat a mortgage which a creditor may have for the security of his debt. A mortgage is in the nature of a pledge. The creditor holding his pledge may retain it until redeemed. It is not precisely a remedy for the recovery of a debt, though it is sometimes so called, but is a transfer of property, which the person transferring may have again, by paying the sum for which the property was mortgaged or pledged; and although there may be other means or remedies for recovering this sum, yet these may be entirely lost and the pledge remain good. Thus in England, under the bankrupt law, a creditor having a mortgage may

RUTLAND,
February,
1835.

Hunt
vs.
Fay, Adm'r.

retain his security, although the debt or sum secured by the mortgage may be effectually gone and discharged by the certificate given to the mortgagor. If the mortgagee proves his debt under the commission, he must surrender his security, unless his security is deficient, when he may be permitted to prove the sum for which the security is deficient, as a debt under the commission.

By the view already taken of the statute of New Hampshire, it is evident that all claims of the creditors, including that of the present plaintiff, were effectually barred. There was neither person or property to which they could resort. The debt, as to every legal effect and operation, was extinguished. The question then will arise, whether a creditor, who has thus suffered his debt to be extinguished, can go abroad and collect his debt in another jurisdiction, where there happens to be property which belonged to the intestate at the time of his decease; and this will lead into a short inquiry into the nature and duty of separate administrations.

It is a principle well settled, that letters of administration issued in one state confer no authority to the administrator to commence a suit in another. If an administrator wishes to collect the funds which belonged to his intestate in another government, he must either take out letters of administration in that government, or collect them through the medium of an administrator there appointed. It is so in England. If an intestate left *bona notabilia* in the two provinces of York and Canterbury, there must be two administrations. An administrator, by virtue of letters granted in Ireland, cannot commence a suit in England. The administration granted in the place where the deceased had his domicil is considered as the principal administration. The administrator there appointed must administer upon all the assets there collected, all he receives from any former administrator, if there has been a previous administration, all he receives or collects by virtue of any authority derived from any other jurisdiction or from any foreign administrator, and after payment of debts, distribute according to the laws of the place where deceased had his domicil.

Administrators appointed in any state other than that where deceased had his domicil, are considered ancillary or subordinate to the principal administrator. Funds are usually collected and transmitted to the principal administrator for distribution. It is not necessary, however, that this should be done, as the courts in the country where the property is situated, having jurisdiction over the same, may make the distribution themselves, and are not obliged to remit to the foreign administrator, having regard in the distribu-

RUTLAND,
*February,*
1835.

Hunt
*vs.*
Fay, Adm'r.

tion of personal estate to the laws of the country where the deceased was domiciled. The duty which every government owes to those who are subject to its jurisdiction, and are citizens thereof, requires that they should protect them. Hence, if debts are due and owing in the country where the subordinate administration is taken out, they will not transmit the funds or make distribution until those debts are paid; they will not and ought not to leave their own citizens to the hazard and inconvenience of proving and receiving their debts in another state, and before the tribunals of that state, but they will first see that justice is done to their own citizens, and then either remit or distribute, as circumstances may require.

It is not immediately connected with the subject before us, and not necessary, to inquire what proceedings are to be had where an estate is actually insolvent. Justice requires that all creditors should be treated alike, and not that the creditors in one state should receive the whole amount of their demands, and the creditors in another should only receive a partial dividend; and no great practical difficulties suggest themselves to me in effecting this object. As it respects creditors proving their debts in the state where the principal administration is, they are all made equal; they take their dividend of the funds at home, and also of those from abroad. If both are sufficient to pay all the debts, they receive the full amount of their claims. If the estate is insolvent, unless all the creditors, wherever situated, who can legally claim a share, are made equal, they have a better chance of receiving a larger dividend than the creditors living in another government.

Considering the administration where the intestate had his domicil as the principal administration, and that the creditors must resort there for the purpose of substantiating their claims, and that all personal assets must ultimately be transmitted for that purpose to the principal administrator, if the funds collected by the auxiliary administrator are necessary for the purpose of paying debts against the estate, and if not wanted, are to be distributed among those entitled thereto, by the principal or auxiliary administrator, as the courts where the funds are collected shall deem expedient, subject to the claims which the citizens of the government have upon the funds within their jurisdiction; we think the citizens of no other state can come in to claim a share of the funds in the hands of a subordinate administrator, and that the object of a commission in the state where the second administration is granted is only to ascertain the claims of the creditors within that state, who are to be

RUTLAND,
*February,*
1835.

Hunt
*vs.*
Fay, Adm'r.

paid before the funds collected are suffered to be transmitted; that to permit any creditor, not living within the jurisdiction where the auxiliary administration is granted, to come in for a share of the effects there found, would be unjust and inequitable, as it respects the citizens of the government where either administration is granted, gives them an undue advantage, and presents great embarrassments in the settlement of estates. And indeed, unless the second administration is thus limited, there can be no good reason why the same creditors may not prove their claims under several administrations, and thus derive an unjustifiable benefit, to the injury of those who are compelled to resort to one fund alone. If an estate is actually insolvent, the claim of a creditor who has neglected to present his claim against the estate where the debtor was domiciled, cannot be allowed to be proved elsewhere without doing manifest injustice to those who have proved their debts, who are of course entitled to all the estate which can be collected through the principal or subordinate administrations; and as it respects the creditors in the state where the subordinate administration is granted, the claim of a creditor living in the same state where the debtor had his domicil cannot be allowed without depriving them of that portion of the estate of the deceased lying within the jurisdiction of their own government, to which they have a right to resort for the satisfaction of their several claims.

It may be made a question, as to the effect of the question before us, of the constitution of the United States securing to the citizens of each state the privileges and immunities of citizens in the several states. This was not urged in the argument, but we have not overlooked it. Upon this subject it may be remarked, that there are various duties arising out of the relations between a government and the citizens thereof, and various rights, which cannot be equally enjoyed. There are some privileges and immunities, which are necessarily connected with the residence of the citizen, which cannot be enjoyed by those residing elsewhere; and the right of resorting to the funds of a deceased debtor, within the territorial limits of a state, may be one of these. Further, the government may, if they please, permit an administrator from abroad, either by virtue of letters of administration there granted, or granted by them, to collect all the funds of an intestate, without any regard to claims of their own citizens. It is a matter of discretion in them, whether they will distribute or remit, and a matter of favor to their citizens that they will not remit, until provision is made for satisfying their claims. While, therefore, the citizens

RUTLAND,
February,
1835.

Hunt
vs.
Fay, Adm'r.

of each state, are entitled to all the privileges and immunities of citizens of the several states, it does not follow that they are entitled to all the favors which a government may bestow on its own citizens. Hence, while a government or state may refuse to permit the funds of a deceased debtor to be taken from their jurisdiction until the claims of their own citizens are first satisfied, it may permit this to be done without regard to the claims of citizens of other states, without violating the provisions in the constitution before mentioned. All the creditors, wherever situated, have the opportunity of presenting and proving their claims, where the debtor resided, and it is only a matter of accident or favor, if any who neglect the opportunity, have any other means of satisfying their claims.

The result to which we have arrived on this part of the case is, that the plaintiff, having been a citizen of the state of New-Hampshire, at the time of the decease of Mr. Gookin, the intestate, at the time when the commission of insolvency issued on his estate, and until the same was returned, having neglected to present his claim to the commissioners there appointed, and in consequence thereof his claim being barred by the law of the state of N. Hampshire, cannot remove into this state, here prove his debt, and come in with the creditors in this state, for a share of those funds, to which they have a claim for the satisfaction of their debts.

As the defendant, on this part of the pleadings, will be entitled to a judgment, it is unnecessary to consider the other question presented by the pleadings, as to the effect of the contract made between the plaintiff and Mrs. Gookin, in April, 1828.

The judgment of the county court, which was in favor of the defendant, is therefore affirmed.

MATTOCKS, J., dissenting.—I happen to differ from the court in this cause; and as the question decided is new, and of some importance, there may be no impropriety in expressing my dissent. I am with the plaintiff altogether; but as the court have declared in this cause no opinion as to the second ground of defence, that is, the effect of the contract entered into with Mrs. Gookin, I have nothing to say on that point. But the statute of New-Hampshire, I consider as intended to be a mere local regulation, or statute of limitations, as to the settlement of insolvent estates in their own jurisdiction; or if not so intended, should be here so construed. It is a provision in an act for the settlement of dead men's estates,

Rutland,
February,
1835.

Hunt
vs.
Fay, Adm'r.

different from the common law mode, which would govern if there were no statute, and to settle insolvent estates ordinarily without suits, and to divide the property within their jurisdiction equally. The whole amount of debts, therefore, must be known, before the dividend can be struck; and those that will not, in a prescribed time, exhibit their debts, shall lose their share in the division. And as the demands were to be presented to the commissioners, and not sued, in lieu of saying, like our statute of limitations, that "all actions shall be commenced and sued within such a time, and not afterwards," it says "shall be *farever barred.*"

Our statute, relating to exhibiting claims before commissioners, says, that if any person neglecting, &c., "shall be forever barred from recovering such demand, or from pleading the same in offset in any action whatever."

These different expressions mean the same thing—that the party shall have no remedy to collect his debt. This is what all statutes of limitation mean; and the old distinction between the right and the remedy, seems to be at war with the principle, that where there is a legal right there is a remedy. And within the government where the act is passed, this distinction would be idle. It is intended to destroy the right by cutting off the remedy—the only proper way to effect it. But as to foreign jurisdiction, the statute cannot reach the remedy, and therefore it not only does not, but is no evidence that it was intended to affect the right out of the state. Although there was formerly some decisions to the contrary, it is now well settled, that there is no distinction as to where the parties did or do reside, under the head of a discharge of the contract, by the law of the place where made, being a discharge every where, except only under the clause of the constitution of the United States, prohibiting states from passing laws impairing the obligations of contracts: Under that clause, the supreme court of the U. States have decided, that the insolvent laws of a state discharge only the citizens of that state.—Story's Conflict of Laws, 283, and authorities there cited. So that without regard to the constitution of the United States, this statute, if it discharges any debt, discharges all debts contracted in New-Hampshire, without regard to the residence of the parties. And with regard to the constitution, if the bar or discharge is like a discharge under an insolvent law, it is a discharge of all debts due to citizens of New-Hampshire, wherever the contracts were made, but no bar to debts due to citizens of other states, whether contracted in New-Hampshire or elsewhere.

In *Lincoln* vs. *Battelle*, 6 Wendall, 475, it was decided, that a

RUTLAND,
*February*,
1835.

Hunt
*vs.*
Fay, Adm'r.

foreign law, purporting to extinguish the debt as well as right of action, there being no insolvency or surrender of property, was in the nature of a statute of limitations, affecting the remedy and not the validity of the contract.

In 2 Mason, 151, Judge Story, after discussing the subject, says, that if the subject was new, he would hold "that where all remedies are bound by the *lex loci contractus,* there is a virtual extinction of the right in that place, which ought to be recognized by every other tribunal as of equal validity;" but admitted and decided the law to be otherwise. That distinguished Judge has lately published his Commentaries on the Conflict of Laws, which probably had not come to hand when the case was argued, or it would not have escaped the attention of the counsel. The 14th chapter of this very learned work, which treats of jurisdiction and remedies, is very satisfactory to my mind, that although the learned Judge has had, and perhaps still has, an individual inclination that the law should be different; yet there are no authorities, English or American, for adjudging any foreign supposed statute of extinguishment, to be other than a statute of limitations. And the admission of so great a judge, that the law is different from what he seems to desire it to be, is to me very convincing. The author, after speaking of the contrary opinion of some continental authorities, says, "The doctrine of the common law is so fully established on the point, that it would be useless to do more than to state the universal principle which it has promulgated ; that in regard to the merits and rights involved in actions, the law of the place where they originated is to govern. But that all forms of remedies and judicial proceedings are to be according to the law of the place where the action is instituted, without any regard to the domicil of the parties, the origin of the right, or the country of the act." He shows that the case of *Melan* vs. *Fitzjames,* 1 Bos. & Pul. 138, where the defendant was discharged from arrest, because upon that contract, he could not have been arrested in France, where it was made, was a mistaken decision, and has been overruled. I will now transcribe his concluding remarks, which apply most directly to the question in controversy in this case, supposing the statute of New-Hampshire was intended to extinguish the debt : It is somewhat long, but in my view very valuable. P. 487, the whole of Sec. 582.— " But although statutes of limitation or prescription of a place where a suit is brought, may properly be held to govern the rights of parties in such suits, or as the proposition is commonly stated the recovery must be sought and the remedy pursued within the time pre-

RUTLAND,
*February,*
1835.

Hunt
*vs.*
Fay, Adm'r.

scribed by the *lex fori*, without regard to the *lex loci contractus*, or the origin of the cause, yet there is a distinction which deserves consideration, and which has often been propounded. It is this: suppose the statutes of limitation of a particular country do not only extinguish the right of action, but the claim or title itself, *ipso facto*, and declares it a nullity after the lapse of the prescribed period, and the parties are resident within the jurisdiction during all that period, so that it has actually operated upon the case, may not such a statute be set up in any other country to which the parties remove, by way of extinguishment or transfer of the claim or title? This is a point which does not seem to have received as much consideration in the decisions of the common law as it would seem to require. That there are countries in which such regulations do exist, is unquestionable. There are states which have declared, that all right to debts due more than a prescribed term of years, shall be deemed extinguished; and that all titles to real and personal property, not pursued within the prescribed time, shall be deemed forever fixed in the adverse possession. Suppose for instance (as has been) personal property is adversely held in a state for a period beyond that prescribed by the laws of that state; and after that period has elapsed, the possessor should remove into another state, which has a longer period of prescription; could the original owner assert a title there, against the possessor, whose title, by the local law and the lapse of time, had become final and conclusive before the removal? It has certainly been thought, that in such a case, the title of the possessor cannot be impugned. If it cannot, the next inquiry is, whether the bar of a statute extinguishment of a debt, *lex loci*, ought not equally to be held a preventory exception? This subject may be thought by some to be open for future discussion. But it should be stated, that as far as the decisions in the American courts go, they do not sustain the distinction. In all the cases however in which the point has been discussed, the statutes under consideration did not extinguish the right, but merely the remedy."

From this I understand that the notion of making the supposed distinction, so far from being established by the English courts, that they have scarcely thought it worthy of consideration; and that in America, the author supposes that no case has occurred, where the court considered that any statute meant to extinguish the debt. But that in the cases upon statutes of limitation which have arisen, this distinction has not been countenanced by the courts.— There is, therefore, to say the least, an absence of all authorities in

RUTLAND,
February,
1835.

Hunt
vs.
Fay, Adm'r.

support of it. That adverse possession of personal property, during the time required by a statute, will give title, has indeed been decided in *Brant* vs. *Chapman*, 5 Cranch, 358; and in other cases on the same principle. That fifteen years adverse possession gives title to land under our statute, and if the question of land title could be tried out of this state, the decision would likely be the same, as the manner of acquiring or transferring the title to property. It is the inherent right of every government to prescribe; and when acquired, the right to it is not local, but the right to extinguish a contract, although it may be a kindred question, is not by the author himself considered the same.

I am not satisfied that the New-Hampshire act is a statute of extinguishment: I regard it as of the same nature as a statute of limitations; and that if it did purport to extinguish the debt, I am not prepared to sanction such an attempt by any other state or kingdom. Neither authorities, justice, or comity, in my view, requires us to go that length. I see no way consistent with the now settled law, to make any distinction between citizens of New-Hampshire and this state, or other states; and it would seem invidious to attempt it. The language of the statute comprehends all; and it is not pretended the constitution of the United States affects this case. The circumstance of the creditor's being in New-Hampshire is of no importance. And to allow the citizens of Vermont to present their claims here, and not those of New-Hampshire, is, in my view, without any good reason; and would equally exclude creditors dwelling in New-York or Massachusetts; and the inconveniences of these exclusive and particular allowances, near the lines of the state, where creditors reside, and property real and personal is often owned by the deceased in two states, especially where there is an actual insolvency, would be very great, and what is believed has not hitherto been understood or practised. But each creditor has exhibited his claims, where he chose; at least, so far as to elect which jurisdiction. And it may often happen that an estate is insolvent where a person dies but only over the river, solvent, and perhaps rich; and why not permit the claims to be allowed, in all places, where there is estate, and a representation of insolvency? And then all the dividends may pay the whole; and if any neglect in any place, they lose the dividend there, if a claim can only be presented in one place: then if this plaintiff had presented his claim, and it had been allowed in New-Hampshire, he would clearly have avoided the supposed extinguishment or bar of the statute; but if the estate there had paid but a portion of the debt, he would have been barred here, because he had complied with the statute there.

RUTLAND,
*February*,
1835.

Hunt
*vs.*
Fay, Adm'r.

It would seem that the law of the domicil of the deceased should only govern the payment of his debts in that government; but the law of the *situs* should govern as to the allowance of the debts, as it does the distribution of the property among the creditors in case of insolvency, such as the priority of debts. And although the administration taken out where the domicil was, is called the principal, and others ancillary or auxiliary, yet it is rather a verbal than a real distinction; for the debts and effects are often chiefly in other jurisdictions than that of the residence. And the general policy as well as justice of the law, at least in New-England, is to apply the property of the deceased to the payment of the debts before the heirs are let in; and to effect this, the proceedings must in some manner be *in rem*. And although a man must die *somewhere*, he may own property and owe debts *every where*. And in this country, where we have so many separate governments, it is of great importance that no new and and additional embarrassment should be interposed to the collection of debts against deceased persons, as the delays and shifts of those who settle estates are already very discouraging to creditors. And the general utility of a principle should be very clear to induce a decision that may do very great injustice in particular cases, as I fear it will in this.