## MINER, BEAL & HACKETT v. AUSTIN.

1. **Administrator**: ANCILLARY ADMINISTRATOR: RIGHTS OF NON-RESIDENT CREDITORS. Non-resident creditors have the right to prove their claims under an ancillary administration; if the ancillary estate is solvent, the administrator may proceed to pay the claims against that estate in full, unless it be shown that the principal estate is insolvent, in which case the non-resident creditors are entitled to share in the ancillary estate. Whether they should be postponed in respect to all payments from the ancillary estate until they have exhausted their claim upon the principal estate, *quære*.

*Appeal from Linn Circuit Court.*

WEDNESDAY, DECEMBER 13.

THE defendant's intestate died in Cook county, Ill., and letters of administration were issued there upon his estate. He left property, however, in Linn county, Iowa, to the amount of about $6,000, and letters of administration were issued there. The plaintiffs have a claim against the estate to the amount of about $60,000, which claim was filed and allowed in the Probate Court of Cook county, Ill., the forum of the principal or domiciliary administration, and they now ask for

an allowance of the same claim in the Circuit Court of Linn county, Iowa, the forum of the ancillary administration.

A claim to the amount of about $2,000 has been allowed in the said Circuit Court to a creditor who is a resident of Iowa. The plaintiffs are residents of Massachusetts. The Circuit Court refused to allow their claim, and they now appeal to this court.

*I. M. Preston & Son*, for appellants.

*Mills & Blake* and *W. G. Thompson*, for appellee.

ADAMS, J.—The plaintiffs' claim was resisted and disallowed on the ground that the Iowa creditor was entitled to be paid in full by the ancillary administrator as against non-resident creditors whose claim had already been filed and allowed in the court of the principal administration. In support of this view our attention is called by counsel for the appellee to the case of *Dawes v. Head*, 3 Pick., 128, and especially to the following words: "The current opinion of the different courts of the United States is strongly in favor of the jurisdiction, and that the claims of the suitors here and of our own citizens who are creditors shall be preferred." This statement, however, appears, by reference to the case, to be contained, not in the opinion of the court, but in the brief of counsel. We have to examine, therefore, and determine for ourselves whether it is the current opinion of the different courts of the United States that resident creditors in such a case are entitled to a preference. In Wharton's Conflict of Laws, Sec. 640, it is said: "An ancillary administrator must satisfy in full the creditors of his jurisdiction, even though the principal administration be insolvent." This statement is based upon *Cook v. Greyson*, 2 Drewry, 286, and *Pardo v. Bingham*, Law Reporter, 6 Eq., 485; neither of which decisions is American. We have then to proceed a little farther in order to determine what is the doctrine of the courts of the United States.

In Redfield on Wills, 3d Vol., page 29, it is said: "As no creditor out of the ancillary administration can present his

*[margin note: 1. ADMINISTRATOR: ancillary administration: rights of non-resident creditors.]*

claim before the commission of the ancillary administration, the personal representative can, strictly speaking, know nothing of any other creditor. All claimants except local creditors should more properly be referred to the principal administration." This statement is based upon *Richards v. Dutch*, 8 Mass., 506, and *Dawes v. Boylston*, 9 Mass., 337.

So far as the assumption is concerned that no claims can be allowed under the ancillary administration except those of local creditors, there is not only no warrant for it in the cases cited, but it is directly in conflict with a later decision in Massachusetts, as we will show hereafter.

In *Hunt v. Fay, Adm'r.*, 7 Vt., 170 (183), the court said: "Considering the administration where the intestate had his domicile as the principal administration, and that the creditors must resort there for the purpose of substantiating their claims, and that all personal assets must ultimately be transmitted for that purpose to the principal administrator, if the funds collected by the auxiliary administrator are necessary for the purpose of paying debts against the estate, and if not wanted are to be distributed among those entitled thereto by the principal or auxiliary administrator as the courts where the funds are collected shall deem expedient, subject to the claims which the citizens of the government have upon the funds within their jurisdiction, we think that the citizens of no other State can come in to claim a share in the funds of a subordinate administrator, and that the object of a commission in the State where the second administration is granted is only to ascertain the claims of creditors within that State who are to be paid before the funds collected are suffered to be transmitted; that to permit any creditor not living within the jurisdiction where the auxiliary administration is granted to come in for a share of the effects found there would be unjust and inequitable,—would give them an undue advantage, and present great embarrassment in the settlement of estates." The foregoing might be considered as an authority for the doctrine for which the appellee contends, were it not for the fact that the right of the plaintiff to prove his claim was denied upon the ground that he was a resident of the State of

New Hampshire, in which was the principal administration, and he had failed to present his claim for allowance in that State within the time allowed in that State. Besides, if the doctrine of the quotation could be regarded as more than a dictum it would be weakened somewhat as authority by the dissent of MATTOCKS, J., who says: "The circumstance of the creditor being a resident of New Hampshire is of no importance. To allow the citizens of Vermont to present their claims here and not those of New Hampshire is, in my view, without any good reason and would equally exclude creditors dwelling in New York or Massachusetts; and the inconveniences of these exclusive and particular allowances near the lines of the State where creditors reside, and property real and personal is often owned by the deceased in two States, especially where there is an actual insolvency, would be very great, and what is believed has not hitherto been understood or practiced." If we may except the decision in this case, as authority for the appellee, we may say that we have seen no American case that is.

On the other hand we have to say that we have seen but one case where the precise question has been drawn in issue, that can be regarded as authority for the appellant, and that case lacks one or more elements which exist in the case at bar. It is in point so far as the question of the preference of resident creditors is concerned. In *Davis v. Esty et al., Adm'rs.*, 8 Pick., 475, the defendants' intestate resided in Vermont at the time of his death and administration was granted to them there.

The intestate owned property in Massachusetts and ancillary administration was granted to the defendants in that state. The estate was insolvent. The plaintiff was a creditor residing in Massachusetts, and presented his claim in that state. The court said: "The property in Vermont by the administrators is to be accounted for there; but the property in this commonwealth is liable to a certain extent to the debt here. As the estate is insolvent, a creditor here is not to be paid his whole debt to the prejudice of creditors in Vermont, but only a *pro rata* dividend. There is no difficulty in this case as to the *modus operandi*. Judgment is to be taken for the whole

debt, but no execution is to issue. The administrators will ascertain the amount of the assets and debts in both states, and pay the creditors here *pro rata.*" This ruling, it is true, is not inconsistent with the ruling of the court below, if its ruling had been made wholly upon the ground that the plaintiff's claim had been allowed under the principal administration, and that the assets under both administrations must be divided *pro rata* among all the creditors whose claims have been allowed under the one administration or the other. But an objection was made to the allowance of the plaintiff's claim on the ground that the Iowa creditor was entitled to be first paid in full out of the Iowa assets, and we will assume that the ruling of the court below was based in part at least upon that ground, especially as this is the principal question which counsel have presented in their arguments. We will proceed then to inquire as to whether a distinction should be made between resident and non-resident creditors.

On this point it is proper to say that there is nothing in the Code to indicate that there should be. On the other hand, the Constitution of the United States provides that "the citizens of each state shall be entitled to all privileges and immunities of citizens in the several states." It is true that it has been sometimes thought that this provision does not apply to the respective rights of resident and non-resident creditors to the estate of a deceased debtor held under an ancillary administration. In *Hunt v. Fay, administrator,* above cited, the court said: "There are some privileges and immunities which are necessarily connected with the residence of the citizen, which cannot be enjoyed by those residing elsewhere, and the right of resorting to the funds of a deceased debtor within the territorial limits of a state may be one of them." But this assertion is not sustained by any very satisfactory reasoning, and it is doubtful whether it can be. In *Goodall v. Marshall,* 11 N. H., 95, the court thought that the constitutional provision had application to such a case.

Without dwelling upon this question, upon which we might not arrive at a satisfactory determination, we may observe that it has been thought that the rights of non-resident creditors

in such a case may be placed upon broader ground. In *Dawes v. Head*, 3 Pick., 128, PARKER, J., says: "We cannot think that in any civilized country advantage ought to be taken of the accidental circumstance of property being found within its territory which may be reduced to possession by the aid of its courts and law to sequester the whole for the use of its own subjects or citizens, and where it shall be known that all the estate and effects of the deceased are insufficient to pay his just debts. Such a doctrine would be derogatory to the character of any government." In *Goodall v. Marshall*, above cited, PARKER, J., says: "If the creditors of the domicile may pursue the property of the debtor in his life time in another government, equally with the citizens of the government where the property is situated, no sound reason suggests itself why they should be debarred of a remedy, and the property be appropriated exclusively, or in the first place, to the satisfaction of the creditors in the latter government on his decease. Even if, by permitting them to come in, the property may be insufficient to pay all, and the creditors in the government where the property is situated be thereby compelled to resort to the principal administration where the debtor had his domicile, or to lose their debts or a portion of them, this result is not other than might have been attained in the life time of the debtor by his withdrawal of the property from their jurisdiction."

In Kent's Com., 2d vol., 434, it is said: "The intimation has been strong that such an auxiliary administrator, in case of a solvent estate, was bound to apply the assets found here to pay debts due here, and that it would be a useless and unreasonable courtesy to send the assets abroad and the resident claimant after them. But if the estate was insolvent, the question became more difficult. The assets ought not to be sequestered for the exclusive benefit of our own citizens."

Upon principle and authority we have come to the conclusion that non-resident creditors have the right to prove their claims under an ancillary administration. How distribution should be made is a different and more difficult question. If the assets in the hands of the principal administrator are suffi-

cient to pay all the claims allowed in the forum of the principal administration, and the assets in the hands of the ancillary administrator are sufficient to pay all the claims which have been allowed in the forum of the ancillary administration, no difficulty can of course arise. If the ancillary estate is solvent, we think that the ancillary administrator may proceed to pay the claims against that estate in full, unless it is shown in the forum of the ancillary administration that the principal estate is insolvent. What should then be done, it is not necessary for us now to determine. In *Dawes v. Head*, above cited, it is said: "The proper course would undoubtedly be to retain the funds for a *pro rata* distribution according to the laws of our state, among the citizens thereof, having regard to all the assets either in the hands of the principal administrator, or of the administrator here, and having regard also to the whole debts which, by the laws of either country, are payable out of those assets." We can but express a doubt whether that rule would not be found in practice to involve too great complications and delay. But the case which we have before us is one where the ancillary estate is insolvent (or will be if the plaintiffs' claim is allowed, as we hold it should be), and there is no evidence as to whether the principal estate is solvent or insolvent. If it is solvent, it is clear that the plaintiffs whose claim has been allowed against it should receive their payment from it. But if it is insolvent, and cannot pay as large a per centage as the ancillary estate could pay if no claims were allowed against it except those which are allowed against it alone, then the plaintiffs would be entitled to share in the ancillary estate; and inasmuch as this may happen, we hold that the Circuit Court erred in disallowing their claim. But justice would seem to require that they should not in the aggregate receive a larger per centage than those whose claims have been allowed against the ancillary estate alone. Whether they should be postponed in respect to all payments by the ancillary administrator until they have exhausted their claim upon the principal estate, is a question not necessarily raised by the record, and we forbear expressing an opinion upon it.                                 REVERSED.