Sandage *et al. v.* The Studabaker Brothers Manufacturing Co.

No. 16.551.

SANDAGE ET AL. *v.* THE STUDABAKER BROTHERS MANU-
FACTURING COMPANY.

CONTRACT. — *In Violation of Statute.* — *Penalty.* — *Recovery.* —There
can be no recovery as between the parties on a contract made in
violation of a statute, the violation of which is prohibited by a
penalty, although the statute does not pronounce the contract void
or expressly prohibit the same.

SAME. — *Patent Right.* — *Sale of Letters Patent.* — *Rescission.* —
*Letters Tendered Back.* — The tender back of letters patent by a
buyer to the seller places the latter *in statu quo* so as to entitle the
former to rescind the contract of sale on the ground that the let-
ters were void for lack of novelty. (See note at end of opinion.)

EVIDENCE. — *Parol.* — *Inadmissible to Extend Effect of Written
Contract.* — Parol evidence is inadmissible to extend the effect of
a written contract to abrogate a prior agreement beyond the terms
of such contract where it is complete and there is no apparent am-
biguity therein that requires an explanation.

INJUNCTION. —*To Restrain Prosecution of Several Actions in Another
State to Avoid Statute of This State.* —*All Parties Residents of
This State.* —The right to an injunction to restrain the prosecution
of several actions on a contract for the recovery of different install-
ments, commenced in the court of another State for the purpose of
avoiding a statute of the State of the residence of the parties, af-
fecting the validity of the contract, is not defeated by the fact that
complainant has other legal defenses available in the foreign juris-
diction.

SAME. —*To Restrain Prosecution of Several Actions in Foreign State.*
—*All Parties Residents of This State.* —*Assignee*—A party to a con-
tract is entitled to an injunction restraining the prosecution of sev-
eral actions for the recovery of different installments thereunder,
commenced by the assignee of the other party in the court of a for-
eign State for the purpose of avoiding a statute of the State in
which the contract was made and to be performed, and in which
both the parties and such assignee reside.

From the St. Joseph Circuit Court.

*A. L. Brick* and *C. Pickard,* for appellants.

*A. Anderson* and *L. Hubbard,* for appellee.

JORDAN, J.—The only questions arising and argued by appellants in this appeal are those based upon the alleged error of the court in overruling their separate motions for a new trial. Two principal propositions are presented for our consideration by appellants' learned counsel, namely: 1st. That the decision of the court is not sustained by sufficient evidence and is also contrary to law. 2nd. That the court erred in excluding certain evidence of the appellant Joshua Sandage. Appellee by this action sought to recover a certain sum of money paid by it to appellant Sandage, in the purchase of letters patent for an improvement in steel skeins, and to enjoin him, together with his co-appellant, the Sandage Steel Skein Company, from bringing or further prosecuting suits in the courts of Cook county, in the State of Illinois, upon certain contracts in writing mentioned in the complaint and for the cancellation of these contracts.

The complaint is in two paragraphs, and the following is substantially a correct summary of the facts as alleged in this pleading: Appellants, at and long before the commencement of this action, were residents and had their domiciles at the city of South Bend, Indiana. Appellee is a corporation also having its domicile at said city, long prior to the instituting of this action, and is there engaged in the business of manufacturing wagons and carriages. On July 19, 1882, appellant Sandage was the owner of certain letters patent for an improvement of steel axle skeins, issued to him by the government of the United States. On the date mentioned he sold and transferred these letters patent to the appellee by a contract in writing, executed by him and appellee. By this contract, the latter agreed to manufacture the patented skein, and to employ Sandage as a foreman in its factory for a period of two years, at a salary of $1,500.00

per year, and to pay him $2,000.00 in cash, and one-third of the net profits arising from the manufacture of the skeins, until he should receive $20,000.00. Sandage agreed to also assign to the company any improvements which he might make in the patent, and in the contract he guaranteed the validity of the letters, and agreed to pay all costs and expenses in enforcing and sustaining the same, and to defend the appellee in all suits for infringements, and to pay all costs and expenses occasioned thereby.

Upon the execution of this contract and transfer of these letters to appellee, it erected buildings and provided machinery, and engaged in the making and selling of the steel skeins, and Sandage was taken into its employ for two years as per agreement. He was paid his stipulated salary, also $2,000.00 in cash, and in addition appellees paid him $7,000.00 in profits accruing up to 1886, as the consideration for the sale and assignment of the patent. On November 20, 1886, the parties executed what was termed a supplemental contract, whereby they changed the original agreement by providing that Sandage, as a final and additional compensation for and in consideration of his letters patent, and any improvement he might make thereon during the life of the patent should be paid by the appellee the sum of $13,000, to be payable as follows, to-wit: January 1, 1888, $4,000.00; January 1, 1889, $3,000.00; January 1, 1890, $4,000.00; January 1, 1891, $2,000.00. It was further provided, in this supplemental contract, that in the event that appellee was compelled to defend its right and title to the patent, or if it should find it necessary to prosecute persons for infringements between November 26, 1886 and January 1, 1891, the date of the last payment, then, and in that event, the reasonable expenses of these suits should be paid by Sandage, to an

amount not to exceed the final payment of $2,000.00, but in the event the appellees brought a suit and was defeated, appellants was not to be held liable for the cost of such suit. It was also stipulated that "So much of the agreement made between the Studabaker Bros. Manufacturing Company and Joshua Sandage, on the 19th day of July, 1882, as relates to the payment by the said Studabaker Bros. Manufacturing Company to the said Sandage, of moneys for and in consideration of his letters patent herein indicated, or which is in any way inconsistent with this agreement, is hereby repealed and made of no effect. The other particulars of said first agreement to continue and remain in full effect." On January 3, 1888, appellee paid Sandage $4,000.00, being the installment due under the supplemental agreement on the first of that month. After receiving said sum, appellant, in November, 1889, made an assignment of both the aforesaid contracts, to his co-appellant, the Sandage Steel Skein Co. The second installment of $3,000.00 was not paid at maturity, and the latter company, claiming to be the holder of these contracts by virtue of an assignment to them by Sandage, brought an action in the circuit court of Cook county, Illinois, upon the contract, in the name of Joshua Sandage, for its use, against appellees to recover this unpaid installment. In 1890, after the second installment of money specified in the second or supplemental contract had become due, and which appellees had refused to pay, the Sandage Steel Skein Co. commenced a second action in the same court against appellees to recover this latter installment. After the assignment of these contracts to said Steel Skein Co., and the commencement of these actions in January, 1890, appellees began a suit in the circuit court of the United States at Chicago, Illinois, against the Illinois Iron Bolt Co., for an infringement on said

patent, and on January 27, 1890, served both of the appellants with notice to the effect that such an action had been commenced in that court, and that the validity of the patent would be assailed and in issue therein, and requested that said parties assist in said cause in defending the validity of the letters patent, claiming an estoppel against them by any judgment that might be rendered therein, against the validity of the patent. At the March term, 1890, of said United States Court, in said action, these letters by that court were adjudged and held to be invalid for want of novelty.    Thereupon, on May 16, 1890, appellees executed and tendered to appellant, Joshua Sandage, a re-assignment of said letters, and a cancellation of said contracts, and requested him to repay to it the sum of $20,000.00, all of which was refused by him.    A like demand for cancellation of said contracts was made upon the Sandage Steel Skein Co., which was also refused.    That in addition to the two suits already commenced by said Skein Company against appellee, said company was threatening to bring other actions on these contracts, in the courts of Illinois, and attach appellee's property, situated in that State.    Sandage, at the time of the sale of the patent right to the appellee, had wholly failed and neglected to comply with the requirements of sections 6054 and 6055 of the Revised Statutes of Indiana, in relation to the sale of patent rights, and sold his said patent to appellee in violation of this statute.    The supreme court of Illinois having held a statute of that State in relation to patents (being one similar to the statute cited above), void on the ground that it violated the federal constitution, it is averred that the appellants have resorted to the courts of Illinois in order to escape the laws of Indiana on that subject.

It is also averred that after this action was commenced

and a temporary restraining order was granted against
the appellants, that they made a sale of these contracts,
in suit, to a resident of Chicago, Illinois. It is also shown
that the tender of a re-assignment of this patent was
continued by bringing the same into court for appellants'
use. These are the conspicuous facts as presented by
the record in this action. A trial upon the issues joined
in the lower court, resulted in a judgment to the effect
that appellants be perpetually enjoined from prosecut-
ing or commencing any suit or suits for the purpose of
enforcing the contracts in question, and that the same
be cancelled and delivered up to the appellee, and that
appellee recover of Joshua Sandage the sum of $13,-
447.42 and costs.

One of the contentions of appellants is, that "the
facts in this case, as alleged in the pleadings, and as
shown by the proofs, do not make such a case as entitled
the appellee to the equitable relief prayed in the peti-
tion and granted by the decree."

Upon the contrary, appellee contends that the evidence
fully authorized and justified the court in finding that
the appellants commenced their suit in the State of Illi-
nois for the purpose of evading the laws of Indiana, and
thereby gaining an advantage over the appellees in the
forum of a sister State.

We have examined the evidence in the record and are
of the opinion that it establishes the facts alleged in the
complaint, and sustains the finding and judgment of the
court. It is insisted by counsel for the appellants that
the alleged facts in the case at bar are a complete and
adequate defense at law to the actions commenced upon
the contracts in controversy in the courts of Illinois.
Conceding this contention, however, can it be urged,
consistent with reason, that this principle of equity can
be invoked, to require appellee, under the facts, to go

into the courts of another State, and there assail these contracts by pleading the facts in bar to the actions therein pending? This contention cannot be sustained upon any reasonable grounds. It is, however, a familar rule that it is not sufficient that there is a remedy at law, but the same must be plain and adequate, and as practical and efficient to the ends of justice, and its prompt administration, as is the remedy in equity. It is manifest, we think, that had appellee been compelled to avail itself of the facts on which it based its cause of action in this case, as a cause of defense to the suits already commenced by the appellee, or to the others that they might institute upon the obligation in question, its remedy would not have been as adequate and efficient as the one invoked in this cause. Two actions had been commenced upon the alleged invalid contract, and another was threatened, in order to recover the installment of $2,000.00 not yet matured. By waiting to contest, by way of defense, the right of appellants to enforce these payments of money under this contract, appellee might have been at least harassed by, and subjected to, repeated and vexatious litigation and much expense incident thereto, by appellants, or those to whom they might have assigned the contract in controversy. By appealing to a court of equity, the remedy was at once adequate and complete, and by one action all the relief to which appellee was entitled under the facts, could be awarded.

Counsel further contend that appellee was not entitled to have this contract rescinded until it had placed Sandage *in statu quo*. We recognize the full force of the rule that where a party desires to rescind a contract, he must do so *in toto*, and return the consideration which he received thereunder, and otherwise do that which will put him and the other party *in statu quo*. But

what was necessary to be done, in view of the facts and circumstances in this case to put Sandage *in statu quo ?* All that appellee received from him was an assignment of his right and title to the patent right in question. This right proved to be invalid and worthless, and appellee re-assigned the letters and tendered back the same to Sandage. This, evidently in our opinion, was all that appellant could, at the furthest, demand. Sandage had guaranteed the validity of these letters. Their validity was assailed in a court of competent jurisdiction; of this fact he was notified and requested to sustain them. They were adjudged by the court to be void for the reason herein stated. By this judgment appellant was bound. That money paid for worthless securities or rights or where the purchaser does not get that for which the money was paid may be recovered back, is a well settled proposition. Whar. Contracts, section 744 ; Benj. Sales, p. 540 ; *Burt* v. *Bowles,* 69 Ind. 1 ; *Jarboe* v. *Severin,* 85 Ind. 496. It was established on the trial that Sandage had failed to comply with the prerequisites of section 6054, R. S. 1881, section 8130, R. S. 1894, and section 6055, R. S. 1881, by neglecting to file copies of his letters with the clerk of the circuit court of St. Joseph county wherein the said patent was sold, and by not inserting in the written contract wherein appellee obligated itself to pay the purchase-price of the patent the words "given for a patent right." The penalty for disobeying this statute is a fine or imprisonment in jail. Section 6056, R. S. 1881, section 8132, R. S. 1894. That the non-compliance with this law rendered the contract, at least so far as appellee therein obligated itself to pay the purchase-price of this patent, invalid, as between the parties, is no longer a disputed question. *New* v. *Walker,* 108

Ind. 365; *Brechbill* v. *Randall,* 102 Ind. 528; *Robertson* v. *Cooper,* 1 Ind. App. 78.

That there can be no recovery·on a contract made in violation of a statute, as between the parties thereto, the violation of which is prohibited by a penalty, is a principle well recognized by the courts. This is true, although the statute does not, in terms, pronounce the contract void nor expressly prohibit the same. This doctrine is well supported by many English and American decisions. *Woods* v. *Armstrong,* 54 Ala. 150 (25 Am. Rep. 671), and the authorities collected in note to this case in 25 Am. Rep., p. 674; *Dillon* v. *Allen,* 46 Iowa, 299 (26 Am. Rep. 145); *Winchester Electric Light Co.* v. *Veal,* 41 N. E. Rep. 334. Counsel for appellant urge that this statute is in conflict with the federal constitution and therefore void. This question has been settled to the contrary in this State and is no longer an open question. *New* .v. *Walker, supra,; Hankey* v. *Downey,* 116 Ind. 118 (1 L. R. A. 447); *Pape* v. *Wright, ib.* 502. It was in evidence that the supreme court of Illinois in the case of *Hollida* v. *Hunt,* 70 Ill. 109 (22 Am. Rep. 63), held a similar statute of that State relating to patent rights to be repugnant to, and inconsistent with the rights exercised by Congress in regard to such rights, and therefore void. In view of this latter fact, in connection with the other evidence in the·case, we are of the opinion that it is shown that appellants, by bringing actions upon this contract in Illinois, instead of instituting the same in Indiana, where all the parties resided, did so for the purpose of obtaining an advantage over the appellee which they were not entitled to under the laws of the latter state.

As long as a citizen belongs to a State he owes it obedience, and as between States, the State in which he is domiciled, has jurisdiction over his person and his per-

sonal relations to other citizens of the State. *Keyser* v. *Rice*, 47 Md. 203 (28 Am. Rep. 448). That a citizen of a State, under a showing of sufficient facts, can be enjoined from commencing or prosecuting a suit against his fellow citizen in the courts of another State, is an equitable rule, recognized and enforced by this court and many others. See *Wilson* v. *Joseph*, 107 Ind. 490 ; *Keyser* v. *Rice, supra ; Dehon* v. *Foster*, 4 Allen, 545, 23 Cent. Law Journal, 268. This rule seems to be sustained by a clear weight of authority in this country. See 10 Am. and Eng. Ency. of Law, p. 909. It is declared in the decisions, that the court, in the exercise of this authority, does not proceed upon any claim of right to control or stay proceedings in the courts of another State or country, but upon the grounds that the person against whom the restraining order is issued, resides within the jurisdiction, and within the power of the restraining court. The court issuing the writ does not pretend to direct or control the one in the foreign State, but without regard to the subject-matter of the dispute, it considers the equities between the parties, and decrees *in personam* according to these equities and enforces obedience to its decree. We think that in the case at bar the facts sufficiently show a manifest equity in favor of appellee as to entitle it to the decree herein.

Appellants complain of the action of the court in not permitting Joshua Sandage to answer the following questions of appellee : "What, if anything was the consideration of the second or supplemental contract as to releasing you of your guaranty in the second contract?" The appellants' attorney explained to the court, on the court's request, as follows : "That that statement in the first contract and the second statement in the supplemental contract in reference to the having of suits and payments of costs, are ambiguous and not

fully explained in the contract; that the contract was entirely abrogated, and that was a part of the consideration of the second contract; that the first contract was for royalties, and in consideration that Mr. Sandage gave up his right to the royalties more valuable to him than the second contract gave him, in consideration that if he gave that up, he should not be held responsible for the patent, and not be liable for any expense on the patent, explained, as stated in the contract; and that the defendants wished to show by this witness, in answer to this question, that the second contract was made upon the consideration and with the full understanding of the plaintiff, that they had investigated the said patent and told the defendant, Joshua Sandage, that they were willing to take their chances as to the patent being upheld in the courts, and that the said Joshua Sandage should not be held responsible for such patent if such patent was at any time held to be invalid."

By this question, appellants' counsel say that they desired and sought to show what the consideration of the supplemental contract was, and to explain what was meant to be repealed by it. It is obvious, we think, that the purpose of the evidence sought to be elicited by this question was to contradict the written obligation. The written contract in question is not incomplete and there is no apparent ambiguity therein that requires an explanation by parol evidence; nor was it in any way rendered necessary to show what part of the first agreement had been repealed and rendered of no effect by the second. This was easily disclosed by a comparison of the one with the other.

The evident purpose of the question, as it appears from the statements of counsel, was to show that the guarantee of appellant Sandage, made in the first contract as to the validity of his patent right, had been re-

pealed by a parol agreement contemporaneous with the second written contract, and thereby contradict this latter instrument. The cases of *Kieth* v. *Kerr*, 17 Ind. 284, to the effect that when a written contract is incomplete, parol evidence that does not contradict it may be admitted to show the whole contract, and *Martindale* v. *Parsons*, 98 Ind. 174, where it is held that parol evidence may be received to aid in the construction of ambiguous contracts, lend no support to appellants' claim upon this question as herein presented. The court did not err in excluding this question. We have examined all the questions necessarily presented by this appeal, and are of the opinion that there is nothing appearing in the record that would entitle appellants to a reversal.

The judgment is therefore affirmed.

HOWARD, J. was absent and took no part in the decision of this cause.

Filed September 27, 1895.

NOTE. — The conflicting authorities on the power of a State to restrict and regulate the sale or enjoyment of patent rights are found in a note to *Commonwealth* v. *Petty*, ( Ky. ) 29 L. R. A. 786.