IN THE MATTER OF THE ESTATE OF LESTER A. WILLIAMS,
deceased.

WILLIAM O'CONNOR, Appellant, v. GIB ROOT, Adminis-
trator, Appellee.

GIB ROOT, Administrator, Appellee, v. MARK J. SEEDS,
and CRISSMAN and SARGENT, Appellants.

GIB ROOT, Administrator, Appellee, v. MARK J. SEEDS,
· Appellant.

Estates of decedents: DOMESTIC AND FOREIGN ADMINISTRATION: AD-
JUDICATION. Where the administration on the estate of a resi-
dent of Iowa was granted here and later another administrator
was appointed in a foreign jurisdiction, the handing of objec-
tions to the later appointment to the judge of that court, based
on the fact of prior administration, but in support of which no
appearance was entered or any reference to the objections in
the order of appointment was made, did not amount to an ad-
judication binding upon the local administrator and prevent-
ing the Iowa court from retaining and exercising jurisdiction.

Same. Had the local administrator appeared to the proceeding in
the foreign court, the granting of letters there would not have
affected the jurisdiction of the court of this state, as letters of
administration have no extraterritorial effect.

Injunction: INTERFERENCE WITH ADMINISTRATION. Where a duly ap-
pointed administrator has collected the assets of the estate of
a decedent who was a resident of this state, and whose credit-
ors are residents of the state, a court of equity will enjoin
one of the creditors from interfering with the estate, through

the medium of another administrator appointed in a foreign jurisdiction.

**Administration:** PRINCIPAL AND ANCILLARY. Where administration has been granted in different states, that of the domicile of decedent is the principal administration and the other is ancillary.

**Collection of assets.** Although an administrator appointed in this state has no authority to proceed by suit for the collection of assets in another state, still if voluntarily paid to him, his acknowledgment thereof is valid as against the claim of another administrator subsequently appointed in that state.

**Decree:** MODIFICATION ON APPEAL. Even though the court's decree is broader than the relief demanded, still if no prejudice results the error will not be corrected on appeal.

**Wrongful death:** DISTRIBUTION OF AMOUNT RECOVERED: EXEMPTION: STATUTES. Under the law of this state the fund coming into the hands of an administrator, as the result of a wrongful death, passes to the heirs and next of kin exempt from the debts of deceased, even though it was recovered under the law of another state.

*Appeal from Linn District Court.—* HON. J. H. PRESTON, Judge.

FRIDAY, MAY 18, 1906.

THE opinion states the facts material to a consideration of the above-entitled cases all of which have been consolidated for the purposes of argument and submission.— *Affirmed.*

*Dawley, Hubbard & Wheeler* and *Crissman & Sargent* for appellants.

*Powell & Powell, Redmond & Stewart,* and *Grimm, Trewin & Moffit* for appellee.

WEAVER, J.— For ten years or more prior to June, 1903, Lester A. Williams, a young unmarried man, resided with his father at the home of the latter in Cedar Rapids, Iowa. About the date mentioned he went to the state of

Illinois and after a short stay there continued his journey to Indiana, remaining in that state about two weeks. Thence he went to Michigan, where he was employed as a printer in various offices in the cities of South Haven, Grand Rapids, and Lansing, and, on December 26, 1903, while still employed in the latter city, was killed in a railway collision. He left no will and no property real or personal except a quantity of books and furniture of the value of some $200 at the home of. his father in Cedar Rapids. It being alleged that his death was caused by the negligence of the railway company, and the laws of Michigan providing for a recovery of damages in such cases, certain creditors of the deceased, acting. on the theory that such damages could be subjected to the payment of his debts, applied to the district court of Linn county, Iowa, and procured the appointment of the appellee as administrator of the estate of the deceased. This appointment was made on December 29, 1903, and was afterwards ratified and agreed to by John H. Williams, father and only heir of the deceased. This administrator employed counsel, and at once took up the matter of collecting the claim against the railway company. Thereafter Mark J. Seeds, who was another creditor of the deceased, and, resident of Iowa, went to Michigan and made application to the probate court of Ingham county in that state for the appointment of an administrator there. While this application was pending one of appellee's counsel being in Michigan went to the judge of probate before whom the proceedings were being had and left in his hands written objections to the granting of the application, alleging that Lester A. Williams, was at the time of his death a resident of Linn county, Iowa, where an administrator had already been appointed. It would seem, however, that these objections were never filed or considered by the Michigan court, for thereafter on March 22, 1904, an order was entered granting the application, and appointing William O'Connor administrator and the record of the application

hearing and order recites no appearance by or objection made on behalf of the Iowa administrator and attempts no adjudication of the conflicting claims of jurisdiction. The letters of administration to O'Connor bear date March 24, 1904. Before this appointment was made the Iowa administrator had effected a settlement with the railway company, from which he received the sum of $3,000 in payment and satisfaction of the claim for damages on account of the death of the intestate. Growing out of these several complications are the three appeals which we now proceed to consider.

I. Soon after the appointment of O'Connor by the Michigan court he appeared in the probate proceedings then pending in the District court of Linn county, Iowa, and applied to have the appointment of the appellee as administrator of the estate of Lester A. Williams set aside, and all orders theretofore made by the court with reference to said estate vacated and annulled. In support of this application, he alleged that said Williams at the time of his death was an inhabitant and resident of Michigan; that he had no estate in Iowa to be administered upon, and the appointment of an administrator in this state was therefore without jurisdiction and void. It was also alleged that the appellee appeared in the Michigan court to object to said O'Connor's appointment in that state, and that said court after a hearing upon the merits found against the position taken by the appellee, and that thereby the order made by said court granting the application for O'Connor's appointment became and was an adjudication of the controversy as to the jurisdiction for original administration, and estopped the appellee to insist upon jurisdiction in Iowa. These claims were denied by appellee, and, upon trial to the court, the application to set aside the appointment of Root and to vacate the orders previously made in reference to said estate was dismissed, and O'Connor appeals.

1. ESTATES OF DECEDENTS: domestic and foreign administration: adjudication.

That Lester A. Williams was at the date of his death a resident of Iowa, and that his absence was for temporary purposes only, with a fixed intention from the outset to return to Cedar Rapids and continue his home there, is too clearly shown to admit of any doubt. He was a student in a college at or near his home, but his studies had been interrupted by the necessity of finding temporary employment to earn money. His letters home expressed his purpose to return soon and resume his studies for his degree, and to get back in time to vote at the next election. He was engaged to be married to a lady residing in the state, and every circumstance disclosed in the record is in entire harmony with the conclusion that his home was in Iowa, and that the proper place for the principal administration upon his estate is here. Indeed, counsel do not seriously contest this proposition, but place their principal reliance upon the so-called adjudication. In our judgment this claim is not well founded. Without taking the time and space necessary to set out the order appointing the appellant O'Connor by the Michigan court, it is enough to say that it makes no attempt directly or indirectly to pass upon any issue between the opposing claimants to the administration. It recites no more than the presentation of the application for O'Connor's appointment, suggests no appearance in the proceeding except that of the applicant Seeds and the presentation of formal proofs that Williams was an inhabitant of Michigan, and now deceased, leaving personal estate to be administered upon, and concludes with the order for the appointment as prayed.

The fact that one of the appellee's counsel out of court placed his written objections to the proceedings in the hands of the probate judge we regard as immaterial in the absence of anything in the record to show that such objections were considered or passed upon by such court. The mere fact that the written objections were not formally marked as filed, would, perhaps, be a matter of no great importance,

if the record of that court gave any indication that any appearance was made by the objector, and that the subject-matter of such objections was considered, or the issue thereby raised was passed upon; but nothing of the kind appears. There is nothing whatever in the order of the probate court which would not naturally appear there upon any ordinary *ex parte* hearing of a petition for letters of administration. We are satisfied, therefore, with the correctness of the conclusion of the district court upon this issue, and hold there was no error in retaining and exercising jurisdiction of said administration by the court below.

Indeed, even if there had been an actual appearance by counsel for the Iowa administrator in the Michigan court, and, after a contest, that tribunal had expressly decided in favor of its own jurisdiction, we do not see how such an adjudication would have any effect whatever upon the right of the courts of this state to proceed with the administration here granted, and to control and direct the distribution of the estate within its jurisdiction, including the moneys collected by its administrator from the railway company in Michigan. Letters of administration have no extraterritorial effect, and it seems clear that an administrator cannot oust the jurisdiction of the court which appointed him or limit the exercise of its authority by going into a foreign state and engaging in litigation therein. Certainly not where the administrator's excursion into the foreign jurisdiction is made otherwise than by the order or sanction of the court of which he is the trustee or officer.

2. SAME.

II. On learning that Seeds was applying for administration in Michigan, appellee filed a petition in equity in the district court of Linn county, Iowa, making said Seeds and his counsel parties defendant, asking that they be enjoined from prosecuting any further proceeding in the courts of Michigan to subject the moneys collected from the railway company

3. INJUNCTIONS: interference with administration.

on account of the death of Lester A. Williams to the payment of the claim held by Seeds against his estate. The petition alleged the residence of the intestate in Cedar Rapids, Iowa; his death in Michigan; the sole heirship of his father, also a resident of Iowa; the appointment of Root as the domiciliary administrator of the estate, and the application of Seeds to procure the administration in Michigan for the purpose of subjecting the damages collected from the railway company to the payment of his claim. The petition further alleged that the intestate left no property or assets in the state of Michigan, and nothing to administer upon in that state except said claim for damages, and that there were no creditors of said estate residing in Michigan; that under the laws of Iowa said claim when collected by the administrator goes to the father of the deceased exempt from the claims of the creditors of the intestate which right defendants were seeking to avoid and defeat by the administration in Michigan where such exemption is not provided for.

Answering this petition, defendants set up substantially the same matters pleaded by the appellant in the case considered in the preceding paragraph of this opinion, and justified the administration in Michigan, on the ground that the deceased was a resident there, and that the question of his residence had been adjudicated by the Michigan court. From the decree of the district court granting the injunction as prayed, the defendants have appealed.

The disputed question of the place of the intestate's residence and of the effect of the alleged adjudication by the probate court in Michigan we have already considered and decided against the contention of the appellants, and the conclusion thus reached appears to us decisive of the principal points urged upon our attention in support of the appeal. It is insisted however that as the petition for the injunction places reliance on the Iowa statutes of exemption, and alleges that a like exemption does not exist in

Michigan, and as the right to recover damages for the death of a person in that state exists solely by virtue of a local statute, no ground is shown for the granting of an injunction. We need not at this point consider how far, if at all, the Iowa statutes of exemption are applicable in the settlement of this estate; for all allegations of the petition in respect thereto may be eliminated or ignored, and the allegations remaining which are proved or admitted are sufficient to justify the decree appealed from. It being shown that the district court of Linn county was within its rightful jurisdiction in granting original administration to the appellee and that in the performance of said trust said administrator had collected and received the fund which is the sole subject of contention between the parties; and it being further shown that the contesting creditors are all residents within the state of Iowa, it was well within the equity powers of the court to prohibit said creditors or any of them from vexatious interference with the estate by instituting other procedings in a foreign jurisdiction. *Sandage v. Studabaker,* 142 Ind. 148 (41 N. E. 380, 34 L. R. A. 363, 51 Am. St. Rep. 165); *Phelps v. McDonald,* 99 U. S. 298 (25 L. Ed. 473); *Keyser v. Rice,* 47 Md. 203 (28 Am. Rep. 448); *Hawkins v. Ireland,* 64 Minn. 339 (67 N. W. 73, 58 Am. St. Rep. 534); *Snook v. Snetzer,* 25 Ohio St. 516; *Vermont v. R. R. Co.,* 46 Vt. 792; *Cunningham v. Butler,* 142 Mass. 47 (6 N. E. 782, 56 Am. Rep. 657).

If Seeds were a resident of Michigan, or in no manner subject to the jurisdiction of the courts of Iowa, and had found in Michigan any property of the intestate not already reduced to possession by the Iowa administrator, a very different question would arise. In such case it may be conceded that he might procure ancillary administration there as to such property. *Miner v. Austin,* 45 Iowa, 221. But no such case is here presented. Seeds is a resident of Iowa. The estate of his debtor is being administered upon here. The money which he seeks to reach is in the hands of the

administrator in this state, and is subject to the order and control of the court which appointed him. Seeds has himself appeared in that court, and is now asserting his claim to share in the very fund which it is the purpose of the administration in Michigan to divert or withdraw from the hands of the Iowa administrator. That court is clothed with complete power to adjudicate and protect his rights and the rights of all other creditors whether they are alleged to arise under the laws of Iowa or the laws of Michigan. It would seem too clear for argument that if the right to prohibit a litigant from embarrassing the course of justice in the courts of his own jurisdiction by proceedings in a foreign state is ever admissible this is one calling for its exercise. Says the court, in Sandage v. Studabaker, *supra:*

As long as a citizen belongs to a state he owes it obedience, and, as between states, the state in which he is domiciled has jurisdiction over his person and his personal relations to all other citizens of the state. That a citizen of a state under a showing of sufficient facts can be enjoined from commencing or prosecuting a suit against a fellow citizen in the courts of another state is an equitable rule, recognized and enforced by this state and many others. . . . It is declared in the decisions that the court in the exercise of this authority does not proceed upon any claim of right to control or stay proceedings in a court of another state or country, but upon the ground that the person against whom the restraining order is issued resides within the jurisdiction, and within the power of the restraining court. The court issuing the writ does not pretend to direct or control the one in the foreign state, but, with regard to the subject-matter of dispute, it considers the equities between the parties and decrees *in personam* according to these equities, and enforces obedience to its decree.

It would be an intolerable condition if a resident creditor of an estate in process of administration here, were permitted to go into a foreign state and gain an advantage over

other creditors in the distribution of such estate which the laws of his own jurisdiction do not afford him. Where administration has in fact been granted in two or more states that which is granted in the state of the domicile of the deceased is to be regarded as the principal administration, and the others are considered as ancillary only. *Bealey v. Smith,* 158 Mo. 515 (59 S. W. 984, 81 Am. St. Rep. 317).

4. ADMINISTRA-TION: principal and ancillary.

Under this rule the appellee, as principal administrator, took title at once to the entire personal estate of the deceased wherever situated. True, his letters of authority did not entitle him to go into a foreign state and enforce his rights by action in the courts, but they did authorize him to take possession of the assets of the estate wherever found, if he could do so peaceably, and to receive payment of debts and claims due to the estate wherever the same was voluntarily made, and his quittance or discharge given therefor was valid against the claim of an ancillary administrator subsequently appointed. *Wilkins v. Ellet,* 76 U. S. 740 (19 L. Ed. 586); *Metcalf v. Lowther,* 56 Ala. 320; *Klein v. French,* 57 Miss. 669; *Bank v. Sharp,* 53 Md. 529; *Teager v. Landsley,* 69 Iowa, 726; *Shluter v. Bank,* 117 N. Y. 129 (22 N. E. 572, 5 L. R. A. 541, 15 Am. St. Rep. 494); note to *Shin's Estate,* 166 Pa. 121 (30 Alt. 1026, 1030, 45 Am. St. Rep. 656); 13 Am. & Eng. Encyc. Law (2d Ed.) 932.

5. COLLECTION OF ASSETS.

It follows that the appellee rightfully received payment of the damages collected from the railway company, and that his title to such moneys is not subject to be disturbed in favor of the administrator subsequently appointed upon application of Seeds. Such being the case, and Seeds being a resident of the jurisdiction of principal administration, he may properly be enjoined from prosecuting a proceeding in a foreign court, which, though powerless to effect the legal right of the parties in relation to the estate, may nevertheless embarrass the course of the administration. A claim

of right by a nonresident creditor to ignore the principal administration and maintain ancillary proceedings in another state where assets of the estate may be found has been denied in *Putnam v. Pitney,* 45 Minn. 242 (47 N. W. 790, 11 L. R. A. 41), and for much stronger reasons should that rule be enforced against a creditor resident of the place of principal administration, who files his claim to share in the distribution, and then goes to another state to secure, if possible, an advantage over other claimants.

It is to be said that the injunction granted is rather broader than was prayed for by the appellee.    The prayer of the petition was, in substance, that appellants be re-6. DECREE: modi- strained from all attempts in the courts of
fication on
appeal.          Michigan to subject the proceeds of the claim against the railway company to the payment of the intestate's debt to Seeds.    The decree grants this prayer, but goes farther and enjoins them from filing any claim, for the debt against the estate of Lester A. Williams in the state of Michigan.    Possibly this last clause might be held erroneous as in excess of the relief demanded, but as it clearly appears that the estate has nothing whatever in the state of Michigan to be administered upon, and no creditors residing there, the error, if any, was without prejudice, and requires no correction.

III. On October 24, 1904, the appellee, as principal administrator of the estate of Lester A. Williams, made his report to the district court of Linn county, Iowa, showing
7. WRONGFUL       that, as such administrator, he had collected
DEATH: distri-  and received from the Pere Marquette Railway
bution of
amount recov-  Company of Michigan the sum of three thou-
ered: exemp-
tion: statutes. sand dollars, as damages, by reason of the death of his intestate negligently occasioned by said company; that said sum was not subject to the payment of the debts of the deceased, but was due and payable to John H. Williams, father and only heir at law of the said Lester A. Williams, and, upon these facts, he asked the court to audit and allow

the expenses incurred in making said collection to be paid from said fund, and that an order be entered allowing and directing the remainder to be paid over to John H. Williams. This report coming on for hearing, Mark J. Seeds appeared, and objected to the granting of the order, alleging that he was a creditor of the estate, that the claim for damages resulting in the collection of said sum of three thousand dollars arose under the statute of the state of Michigan, and that such act makes no provision to exempt the proceeds of such claims from the payment of the debts of the deceased. The objection was overruled, the report of the administrator approved, and an order entered directing the payment of the fund less expenses to John H. Williams. From this order Seeds appeals.

Upon the hearing in the trial court the testimony taken upon the other issues already considered by us was read in evidence. The statutes of Michigan bearing upon the controversy were also introduced. This court has recently held that where a statute provides for the recovery of damages for death wrongfully occasioned, the moneys collected are payable to the persons, and in the proportions provided by such statute, without regard to the law of domicile of the beneficiaries. See *Estate of Coe,* 130 Iowa, 307. But the precedent thus afforded does not cover the point raised. It is conceded by counsel on both sides that under the laws of both Iowa and Michigan, John H. Williams is the sole heir and next of kin of the deceased, and the one question to be disposed of is whether his right to receive the money is subject to the payment of claims against the estate. By our Code (section 3313), it is expressly provided that damages collected on account of death wrongfully occasioned are to be treated as a part of the estate, and distributed to the heirs and next of kin exempt from the debts of the deceased. This provision it will be noticed is general, and found in the chapter providing for the settlement of estates, and is not a condition or limitation embodied in the statute providing for

the survival of actions of this nature. It makes no exception, and, if the fund coming into the hand of the administrator is derived from a claim for the wrongful death of his intestate, we can now conceive of no reason for denying it the protection of the statute, simply because it was recovered under the laws of another state.

It is perfectly competent for Michigan or any other state creating a statutory right of action to designate the person or persons who may have the benefit thereof, and such designation will govern and control the right of recovery wherever it may be enforced. But if any such person or beneficiary resides in another jurisdiction, the statutes of the state giving the right of action cannot follow the fund when once it has been collected into the domicile of the beneficiary, and determine whether it shall or shall not there be treated as exempt from the debts of the deceased. The nature and extent of exemptions from liability for debt are matters of policy which each state adopts for itself in pursuance of what it conceives to be the interest of its citizens. Its courts will take notice of the laws of its sister states so far as may be necessary to determine questions of title and ownership of property in controversy, but will look only to its own laws to determine whether the property in its jurisdiction is exempt from liability for debt. If, then, the money in the appellee's hands is to be considered a part of the estate of Lester A. Williams, we are of the opinion that the exemption attaches, and there was no error in the ruling of the trial court.

But there is another aspect of the case which should not be ignored. While our statutes and the decisions of our courts proceed on the theory that the recovery for death wrongfully occasioned is for damages which the estate of the deceased has thereby sustained, such seems not to be the idea of the Michigan statute. That act, after providing in general terms for the liability of a railway company for death occasioned by its wrongful act, proceeds as follows:

" Every such action shall be brought by and in the name of
the personal representatives of such deceased person, and the
amount recovered in any such action shall be distributed to
the persons, and in the proportion provided by law in rela-
tion to the distribution of personal property left by persons
dying intestate; and in every such action the jury may give
such amount of damages as they shall deem fair and just to
the persons who may be entitled to such damages when recov-
ered." 'Comp. Laws Mich., section 6309.

This statute, commonly known as the " Survival Act,"
has been supplemented by another known as the " Death
Act " providing for the recovery of damages where the death
negligently or wrongfully occasioned is instantaneous or im-
mediate upon the injury. The persons entitled to the bene-
fit of the recovery are the same in both cases. It was under
this latter act, if we understand the record, that the dam-
ages in controversy were collected. The language of the stat-
ute, which we have above quoted, seems to indicate a legisla-
tive intent to provide a recovery, not for the damages to the
estate of the deceased, but such damages as his death has
occasioned to his family or next of kin. If such be the true
meaning of the act, and the obligation or liability of the
railway company under such circumstances is not to the es-
tate of the deceased, but to the persons standing in the speci-
fied relation to the said deceased, it follows of necessity that
the creditors of his estate have no claim upon the moneys
so collected, and are not entitled to subject them to the pay-
ment of the decedent's debts. This interpretation is not
only justified by the ordinary import and effect of the words
employed in the statute, but such appears to be the construc-
tion placed upon it by the Supreme Court of Michigan. In
Dolson v. R. R. Co., 128 Mich. 444 (87 N. W. 629) (the
court being divided upon another proposition) Hooker, J.,
writing the majority opinion, speaks of the recovery of dam-
ages as being " for such pecuniary injury only as they (the
next of kin) can be shown to have suffered." In the same

case, Moore, J., says that " the purpose of the action is to compensate certain persons for the indirect injury to them in causing the death of another."   And, again, " It is sometimes said that it is impossible to draw a line severing with accuracy the damages to the person injured from those to his relatives; but it is a sufficient answer to this objection that both the language of the statute and all the decisions require it to be drawn."   To the same effect, see *Hurst v. R. R. Co.,* 84 Mich. 539 (48 N. W. 44).   Bearing upon similar statutes in other states, see *Chicago v. Major,* 18 Ill. 349 (68 Am. Dec. 553); *Brown v. R. R. Co.,* 102 Wis. 137 (77 N. W. 748, 78 N. W. 771, 44 L. R. A. 579); *Foot v. R. R. Co.,* 81 Minn. 493 (84 N. W. 342, 52 L. R. A. 354); *Topping v. St. Lawrence,* 86 Wis. 526 (57 N. W. 365).

The fact that the recovery must be enforced, if at all, by the administrator, does not of itself make the amount a part of the estate.   As said in Chicago v. Major, *supra,* " the personal representative brings the action, not in the right of the estate, but as trustee for those who had more or less pecuniary interest in the continuance of the life of the deceased."

Under this construction of the Michigan act, the damages collected by the administrator constitute no part of his estate.   They are held by the administrator for the exclusive use and benefit of the father of the intestate, and the order of the trial court directing payment accordingly was correct, and must be *affirmed.*