WABASH RAILWAY COMPANY, Appellant, v. ELMER A. PETERSON et al., Appellees.

**INJUNCTION:** Restraint of Foreign Suit. An injunction will lie
1 to restrain the good-faith prosecution in a foreign state of an
   action between a resident of this state and one suable in this
   state, when it appears that plaintiff will be equally protected
   in this state, and defendant will be saved the substantial and
   needless disadvantage of making his defense by deposition, or
   suffering the nonrecoverable expense of taking his witness to
   such foreign state. (See 37 G. A., Ch. 293.)

**CONSTITUTIONAL LAW:** Restraint on Foreign Suit. An injunc-
2 tion to restrain the needless prosecution of an action in the
   courts of a sister state is neither (1) an attempt to control
   the courts of such state, nor (2) a denial of any right guar-
   anteed by the Constitution or laws of the United States.

**STATUTES:** Public Policy—Controlling Resident as to Place of
3 Suit. Whether a resident of this state shall be permitted to
   bring an action in a foreign state against a defendant suable in
   this state is a question of public policy, of which the general
   assembly is the sole judge. (See 37 G. A., Ch. 293.)

**INJUNCTION:** Prevention of Crime—Irreparable Injury. Principle
4 recognized that injunction will lie:
       1. To prevent the commission of *crime* if so preventing will
   avoid irreparable injury to civil rights, and
       2. To prevent *vexatious* litigation.

**INJUNCTION:** Restraint of Foreign Suit—Waiver by Compulsion.
5 One sued in a foreign state in violation of the law of this state
   does not waive his right to enjoin the prosecution of such for-
   eign suit by appearing and filing answer therein.

**CONSTITUTIONAL LAW:** Impairment of Contract—Attorney and
6 Client. A contract between an attorney and client for the pros-
   ecution of an action in a foreign court is not impaired, in a
   constitutional sense, by injunction proceeding under a subse-
   quent statute prohibiting the bringing of such suit in a foreign
   court.

*Appeal from Pottawattamie District Court.—Shelby Cullison, Judge.*

DECEMBER 19, 1919.

The appellees brought suit against the appellant railway company and another, in a Missouri court, at Kansas City. The appellant obtained a temporary injunction, restraining Peterson and Hess from further promoting the prosecution of said action, and from doing any act or thing in furtherance thereof. The motion to dissolve this injunction was sustained; hence this appeal.—*Reversed.*

*Tinley, Mitchell, Pryor & Ross,* for appellant.

*George H. Mayne,* for appellees.

SALINGER, J.—I. The petition filed in the Missouri court claims of said railway company $20,000 for damages alleged to have been caused by an assault upon Peterson on the part of one Terrell, while acting as conductor in the employ of said company; $5,000 more is claimed on account of alleged wrongful arrest and imprisonment of Peterson; and $5,000 more for alleged malicious prosecution of Peterson. The plaintiff contends that the suit is brought in bad faith, and, even if that were not so, there is no good reason why it should not be prosecuted to a termination in Council Bluffs, instead of Kansas City. Defendants respond with a denial of bad faith, and with an averment that Terrell is a resident and citizen of Kansas City; that Peterson has a right to a joint recovery against him and the company; and that the suit is brought in Kansas City because there only can Peterson have a joint recovery. The facts are not in dispute. Before the suit was brought in Missouri, defendant Hess heard Terrell testify that Terrell was a resident and citizen of Kansas City, and makes af-

1. INJUNCTION: restraint of foreign suit.

fidavit that he believed said testimony to be true. No service has been had on Terrell, because the sheriff was unable to find him in Kansas City. There is an undisputed affidavit that affiant knows Terrell well, and that he is a resident and citizen of the state of Kansas. The acts complained of in the Missouri suit were done at Council Bluffs, if anywhere; the plaintiff company has an agent at Council Bluffs, upon whom personal service of notice must be had, and it is suable there, and suable also in Kansas City; both Peterson and Hess live at Council Bluffs; so do most, if not all, of those who may be witnesses; all the records that bear on said alleged wrongful imprisonment and malicious prosecution are at Council Bluffs. Kansas City is some 200 miles from Council Bluffs, and the Missouri court cannot compel the attendance of the witnesses.

II. As to the claim that the bringing of the suit was in bad faith, and a mere attempt to vex and harass. It is somewhat difficult to believe that Peterson was greatly moved by a desire to have a $30,000 claim established against a conductor, as well as against the railroad for which the conductor acted. But, in view of the fact that there is a legal right to a joint suit, and the fact that the defendant Hess believed that the only place where a joint recovery could be had was Kansas City, we shall not place our decision upon the alleged bad faith in *bringing* the suit.

III. Grant the forum was chosen because Kansas City was honestly believed to be the only place where a joint recovery could be had. But, as has been seen, it is now known that such recovery is no more possible in Kansas City than in Council Bluffs. Grant that the mere bringing of the suit should not, when brought, have been restrained. But the purpose of *bringing* the suit having failed, and its further prosecution, being a needless hardship on plaintiff, without advantage to Peterson,—if provision be made for reimbursing Peterson for the taxable costs expended in

bringing suit,—should not so much of the injunction stand as restrains the defendant "from further promoting the prosecution of the action, and from doing any act or thing in furtherance thereof?" What reasons for dissolving this much of the injunction are advanced?

IV. The first argument is that the Iowa court has no jurisdiction to restrain the prosecution of a suit in a sister state, because that would be an attempt on the part of the Iowa courts to control the action of courts in a sister state; that to exercise such a jurisdiction is in violation of guarantees afforded by the Constitution of the United States and the laws of the United States. It is settled by the overwhelming weight of authority—indeed, there is no dispute in authority—that such an injunction as is here prayed acts merely upon those who are within the jurisdiction of the court, as a regulation of their conduct, and is not an attempt to control the action of the courts in a sister state, and is not in contravention of any right given by the Constitution or laws of the United States; and said objection is untenable. 14 Ruling Case Law 417; *Cole v. Cunningham*, 133 U. S. 107 (10 Sup. Ct. Rep. 269) ; *Weaver v. Alabama G. S. R. Co.*, (Ala.) 76 So. 364. Nor is the first objection well taken. While the courts will exercise the power cautiously, and for substantial reasons only, they *have* the power, and its exercise is not an interference with the powers of the courts of the sister state. *Jones v. Hughes,* 156 Iowa 684; 1 High on Injunctions (2d Ed.) 75; *Weaver v. Alabama G. S. R. Co.*, (Ala.) 76 So. 364; 2 Story's Equity Jurisprudence (13th Ed.) 207; *American Exp. Co. v. Fox,* 135 Tenn. 489 (187 S. W. 1117) ; *Mason v. Harlow,* 84 Kan. 277 (114 Pac. 218) ; Note to *Eingartner v. Illinois S. Co.,* 59 Am. St. 859, 879. The trial judge who dissolved the injunction so held, and with these authorities and this pronouncement below, we meet the repetition here

2. CONSTITUTIONAL LAW: restraint on foreign suit.

of the claim of appellees that there is no power to grant this injunction.

### 4-a

At the time the Missouri suit was instituted, there was in effect Chapter 293 of the Acts of the Thirty-seventh General Assembly, which is an act dealing with "Offenses against Public Policy." It provides:

"It shall be unlawful for any person, with the intent, or for the purpose of instituting a suit thereon outside of this state, to seek or solicit the business of collecting any claim for damages for personal injuries sustained within this state  *  *  *  or in any way to promote the prosecution of a suit brought outside of this state for such damages, or to do any act or thing in furtherance thereof, in cases where such right of action rests in a resident of this state,  *  *  *  and is against a person, copartnership or corporation subject to personal service within this state."

We gather from some of the citations that appellees challenge the constitutionality of this act for having an insufficient title. The title is much more ample than it was in many enactments, the constitutionality of which we have upheld. See *State v. Gibson,* —— Iowa —— (174 N. W. 34).

### 4-b

It is urged that such an enactment may not be given extraterritorial effect; that the legislature of a state may not prohibit its citizens from bringing suit wheresoever they elect, and contended that *Atchison, T.*

3. STATUTES: public policy: controlling resident as to place of suit.

*& S. F. R. Co. v. Sowers,* 213 U. S. 55, so rules. If the Iowa act of assembly in question does no more than define and enforce what the legislature deems it wise to declare the public policy of the state to be, neither the *Atchison* case nor any other we have been able to find prohibits such declaration of public policy, nor the making it effec-

tive as against the citizens and residents of the state. So, on this head, the controlling question is whether the act of the thirty-seventh general assembly is anything more than a declaration concerning what public policy shall be as to bringing certain suits in states other than Iowa. We agree that the act creates a misdemeanor; we agree that the punishment applies only to soliciting such suits as the act describes. But the legislature can declare conduct to be against public policy, though it fails to make such conduct punishable. See *Farmers' Sav. Bank v. Jameson*, 175 Iowa 676. In many states, it is not a crime to bring suits in sister states for the purpose of defeating exemptions; but the bringing of such suits has been restrained for being violative of public policy. See *Teager v. Landsley*, 69 Iowa 725; *Hager v. Adams*, 70 Iowa 746; *Wierse v. Thomas*, 145 N. C. 261 (59 S. E. 58); *Wilson v. Joseph*, 107 Ind. 490 (8 N. E. 616). It is true that soliciting only is made punishable, and true there is no evidence of solicitation. But does it follow that the act condemns nothing but the solicitation? So to hold is to overlook that the unsolicited suit works precisely the same hardship that it does when solicited. We conclude that there is power and right to restrain such suit as the one at bar, because, whatever was actually intended, such suit is an evasion of the public policy of this state. Case law dealing with such injunctions has been greatly concerned with whether the bringing of certain suits was violative of public policy. We are relieved from that investigation because the legislature is the supreme interpreter of what is sound public policy, and the bringing of such suits as the one before us has been authoritatively declared to be contrary to public policy of this state. And the act has cleared up the difficulty that has at times been found where the complainant was a corporation. For the statute expressly places corporations who may be served with no-

tice in Iowa in the class against whom such suits as this may not be maintained.

V.   As said, said act of assembly creates a crime, and the next contention is that the writ should be dissolved, if for no other reason than that it is elementary that equity will not intervene to prevent crime.   Equal-

**4 INJUNCTION: prevention of crime: irreparable injury.**  ly elementary, however, is it that an injunction may issue even though it restrains the commission of a criminal act, if so to restrain will prevent irreparable injury to civil rights which will be caused by the doing of the criminal act.   And the trial court so held.   Where we differ from it is because it ruled that here no such injury was threatened.   It was of opinion that the case came within the rule that, where the threatened act constitutes a wrong only because it is a violation of a criminal statute, equity will not interfere unless the criminal act "will cause irreparable injury to property rights or rights of a pecuniary nature."   We agree.   But we cannot agree to the deduction that here no such injury was threatened.   While we agree with the trial judge that no one has a vested interest in mere procedure, and that the injunction is not warranted merely because in Missouri there may be a verdict without the concurrence of every member of the panel, we are of opinion that, aside from that, the Missouri suit will work an irreparable and substantial injury to civil and to property rights of a pecuniary nature.   If not a direct pecuniary loss, it is still a substantial and needless disadvantage to compel one to make defense by depositions, when bringing suit in a place where it can be brought without disadvantage to plaintiff will obviate the need of defending by that method.   Needlessly compelling a party to pay for bringing witnesses 200 miles is a direct pecuniary injury.   And it is an irreparable one, because the outlays for the purpose are largely nontaxable, and they could not be recovered for, no matter how rich is

the party that makes such outlay necessary. Injunctions such as this one have been sustained when the pecuniary loss was less direct than this. In *Freick v. Hinkly,* 122 Minn. 24 (141 N. W. 1096), a suit was enjoined merely because it would result in evading a local law of the common domicile. To like effect is *Jones v. Hughes,* 156 Iowa 684. In *Sandage v. Studabaker Bros. Mfg. Co.,* 142 Ind. 148 (41 N. E. 380), there was an injunction because the suit was to evade a statute dealing with the sale of patent rights. In *Miller v. Gittings,* 85 Md. 601 (37 Atl. 372), a resident of the state was enjoined from prosecuting a suit in another state, on a contract which was void by express state statutes relating to gambling transactions. The court will prevent any person from stopping another by unlawful means from engaging in, remaining in, or performing lawful business, labor, or duty, although the acts sought to be restrained, if committed, would constitute a crime. 14 R. C. L. Section 78 (p. 376.) And in *First Nat. Bank v. Sarlls,* 129 Ind. 201 (28 N. E. 434), it was held that a property owner may maintain a suit to enjoin the rebuilding, in violation of a valid city ordinance, of a wooden building which has been partially destroyed by fire, although it would not be a nuisance *per se,* if it would work special and irreparable injury to him and to his property, as by diminishing the value of the property, and increasing the rates of insurance thereon. We are unable to see a distinction between having the right to an injunction because a threatened act will impair the value of one's dwelling house by $1,000 and a case where the same act will take $1,000 out of the pocket of the defendant. The method of causing the loss of the $1,000 cannot be the test. We hold that the maintenance of the suit in Missouri will cause plaintiff such injury as to warrant the injunction. We are in accord with the statement in Section 105 of 1 High on Injunction (2d Ed.), that:

"If, however, upon balancing the convenience and incon-

venience likely to result to the different parties, it appears that the questions involved can be more conveniently litigated in the foreign court, an injunction will be refused. * * * And if it be made to appear that the matters in controversy can be more expeditiously adjusted and the ends of justice better attained in the jurisdiction where the parties then are, proceedings in the courts of the foreign country will be enjoined."

And we find in and agree with the following language in *Miller v. Gittings,* 85 Md. 601:

"The transactions in this case all occurred in the city of Baltimore; the parties to this controversy are all citizens and residents of that city; the evidence would naturally be there, and readily obtainable; and courts are established there, with jurisdiction competent to determine the rights of the parties according to the law of Maryland, of which they have judicial knowledge. The complainant is (and should not be) subjected to prosecution before a tribunal of another state, which must ascertain the law through imperfect methods of proof, where there must be much difficulty and expense in obtaining the evidence of the witnesses, and where the legal processes have features of severity and harshness from which the citizens of Maryland are protected by the constitution of the state."

VI. Without reference to actual intention, there is no escaping from the conclusion that, on the facts at bar, the suit is an instance of vexatious litigation, such as is condemned by the quite general consensus of authority. See 2 Story's Equity Jurisprudence (13th Ed.) Section 901; 14 R. C. L., Section 109, (p. 408.) Apparently, *Gray v. Coan.* 36 Iowa 296, runs counter to the weight of authority. But, on analysis, the case turns on the proposition that one who is pursued with repetition of suits has an adequate remedy at law, because he may plead the earlier adjudications in bar. Whatever may be thought of the soundness of this

reasoning, the decision is not in conflict with the cases that permit an injunction to restrain vexatious litigation in cases where there is not the remedy at law asserted in the *Gray* case. It suffices to say that here there is no remedy for the needless expenditure the prosecution of the suit will force upon the defendant. But it is unnecessary to plant this decision on the ground of vexatious litigation; wherefore, we pursue the subject no further.

There are some things said in *Illinois Life Ins. Co. v. Prentiss*, 277 Ill. 383 (115 N. E. 554), for which it may be reasonably claimed that they are not in accord with our views, and we decline to follow the case.

VII. It is next said that the railway company has waived its right to insist upon the injunction, because it has appeared in the Missouri suit and answered. Waivers are not often based upon acts done under compulsion. The plaintiff company was suable in Missouri; service could be made upon it there, even as it could in Iowa, though plaintiff was entitled to an injunction, that did not deprive the Missouri court of jurisdiction. If the company had not answered, there would have been default, and after that, it would have been idle to go on with the injunction suit. Judgment having gone against the company by default, it would profit it nothing to have further prosecution of the suit enjoined. Therefore, in the eyes of the law, its appearance and answer was no waiver, because it was not a voluntary act. It was no more a waiver than payment to avoid the service of execution is a waiver of the right to appeal. To sustain the appellees at this point, one must hold that the company had the right to enjoin the prosecution of the suit in Missouri, provided it could gain nothing by exercising that right. If it did not appear and answer, an injunction would be useless. According to appellees, if it did appear and answer, it waived the right to

5. INJUNCTION: restraint of foreign suit: waiver by compulsion.

the injunction. The solution is to say that the appearance and answer were forced upon plaintiff, and that, having by their answer kept the suit open so that no judgment has yet been entered, it is, notwithstanding such answer, entitled to have the further prosecution of the suit stopped, if there be good, lawful reason for granting it the injunction.

VIII. It appears that, before said act of the thirty-seventh general assembly became effective, Peterson employed a firm of lawyers in Kansas City, and entered into contract with them and his codefendant Hess, to prosecute the Missouri suit. For this it is contended that granting this injunction will impair the obligations of said contract, and that, therefore, the injunction will be violative of constitutional guaranties. If that be sound, a statute which permits a suitor to dismiss his suit at pleasure would be violative of the same constitutional guaranties if the suitor had contracted with a lawyer to represent him in the prosecution of the suit. We care to say nothing additional, in meeting this argument of the appellees'.

6. CONSTITUTIONAL LAW: impairment of contract: attorney and client.

We find nothing that aids in solving the questions in *O'Haire v. Burns,* 45 Colo. 432 (101 Pac. 755); *Conkling v. Standard Oil Co.,* 138 Iowa 596; *Mallory Com. Co. v. Elwood,* 120 Iowa 632; *Smith v. McQuiston,* 108 Iowa 363; *Chase v. Kaynor,* 78 Iowa 449.

The order dissolving the temporary injunction must stand reversed.—*Reversed.*

LADD, C. J., EVANS, GAYNOR, PRESTON, and STEVENS, JJ., concur.